LADD & ` WILSON, tenants, plaintiffs in error, *vs.* JAMES JACKSON, administrator *et al.*, defendants in error.

(McCAY, Judge, having been counsel below did not preside.)

Where the title to land of a deceased intestate vests in his minor heirs at the time of his death, the statute of limitations or prescription, ceases to run against them during their minority.

Ejectment. Limitations. Prescription. Before Judge CLARK. Lee Superior Court. March Term, 1871.

This was ejectment by Doe, upon the demises of Hancock and James Jackson, as administrator of A. J. Lamar, etc., begun in June, 1863. In September, 1869, the declaration was amended by adding a demise in the name of the heirs of A. J. Lamar, (defendants objecting,) and the cause was tried.

The plaintiffs read in evidence a regular chain of title from the State down to A. J. Lamar. The deed to him was made in 1844. It was shown that A. J. Lamar died in 1848, and A. J. Lamar became his administrator and guardian of his said heirs, in 1849. One of these sole heirs was, in 1869, twenty-two years old, and the other was twenty-nine years old. The *locus*, possession by defendants when suit was brought and the annual value of the premises were proven. Defendants read in evidence a series of deeds begun in 1851 and ending in 1856, by which the land was conveyed regularly from the first feoffer in this chain to the defendants, but there was no showing that any of these feoffers had any regular title, nor was either of them a person under whom plaintiffs claimed. A witness said plaintiffs had conveyed this land to defendants pending this suit, but no such conveyance was produced or accounted for. There was evidence introduced to establish a continuous possession by defendants and their feoffers under said deeds from 1841 or 1845 up to the beginning of the suit, and to reduce the *mesne* profits claimed by plaintiffs. In rebuttal, there was evidence that

Ladd & Wilson *vs.* Jackson.

the first of defendant's feoffers, being in possession in 1847, claimed to hold under A. J. Lamar, and for him.

Defendants requested the Court to charge the jury as follows:

1st. If defendants or their feoffers were in possession in 1847, under color of title and claim of right, and continued so to hold, regularly, openly and *bona fide* until 1863, plaintiffs are barred.

2d. If adverse possession begun in 1847, and the right of action accrued in A. J. Lamar's lifetime, the Statute of Limitations began to run against Lamar, and plaintiffs are barred.

3d. Seven years' possession prior to suit, and after administration on Lamar's estate, bars plaintiffs.

4th. If defendants bought the land from plaintiffs the defendants are entitled to a verdict.

The Court charged that, though the statute began to run against A. J. Lamar in 1847, and did run till his death, at his death it stopped running as against the heirs during their minority. The requests were refused. The jury found for the plaintiffs. There was a motion for new trial upon the grounds that said verdict was contrary to law and the evidence; because the Court erred in charging as aforesaid and refusing to charge as requested, and in allowing the new demise added. This motion was overruled in March, 1870, and error is assigned on said grounds.

HAWKINS & BURKE; N. A. SMITH, for plaintiff in error.

LYON & IRVIN, for defendants.

WARNER, Judge.

This was an action of ejectment to recover the possession of a lot of land on the demise of the administrator of Andrew J. Lamar, and on the amended demise of the guardian of the minors of Andrew J. Lamar, against the defendants. The adverse possession of the land by the defendants, and

those under whom they claimed, commenced during the life-time of the intestate. The administrator on his estate was appointed in 1850, and the guardian of the minor children appointed in 1854. The action was commenced in June, 1863. On the trial of the case the jury found a verdict for the plaintiff. A motion was made for a new trial, on the ground that the Court erred in its charge to the jury in regard to the Statute of Limitations, and in refusing to charge as requested on that point in the case. The motion for a new trial was overruled, and the defendants excepted. The Court charged the jury, "that the Statute of Limitations, though it began to run as against Lamar, in 1847, and up to his death, in 1848, stopped to run during the minority of the children of Lamar." The point in the case is, whether the infant heirs were barred when there was an administrator of the intestate and guardian of the minors, who could have sued for the land during their minority, and failed to do so within the time prescribed by law. This question was not decided by this Court, in *Pendergrast vs. Foly,* 8th Georgia Reports, 11, but was left an open question under the provisions of the Act of 1817. On the death of Lamar, the intestate, the land descended directly to his heirs, and the title thereto was vested in them, subject to be administered by his legal representative for the payment of debts, and for distribution, which was not done in this case. It is said the guardian of the minors might have sued for the land; but are the minors barred of their legal right to the land because their guardian *failed* to do so? The 2644th section of the Code declares that "*no prescription* works against *the rights of a minor during infancy."* The 2645th section declares that " a prescription commenced, *shall cease* against persons under disability, pending the disability." The minors were under a *disability* to enforce their legal rights to the land during their infancy, by the express provisions of the Act of 1817; and by the Code, no prescription works against their rights. This provision of the Code may fairly

Wright *vs.* Smith.

be considered as a legislative interpretation of the Act of 1817, inasmuch as the title to the land vested in the minor heirs of the intestate at the time of his death; the statute *ceased* to run against them during their minority, and there was no error in the charge of the Court, or in its refusals to charge in regard to this point in the case.

Judgment affirmed.