RAMÓN ORLANDO DE JESÚS MARTÍNEZ ET AL., demandantes y apelantes, *v.* CARLOS E. CHARDÓN, ETC. ET AL., demandados y apelados.

*Número:* O-84-533        *Resuelto:* 19 de marzo de 1985

*Jaime R. Nadal Arcelay,* de *Cancio, Nadal & Rivera,* abogado de los recurrentes; *Alberto J. Pérez Hernández,* del bufete de Alex González, abogado de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Tribunal de Apelaciones de Estados Unidos para el Primer Circuito nos ha certificado importantes cuestiones referentes a la prescripción extintiva o liberatoria. Las preguntas emergen del contexto siguiente de hechos.

El 6 de junio de 1977 Ramón De Jesús Sierra, empleado del sistema de instrucción pública, recibió una carta en que se le comunicó que quedaba trasladado de su puesto de supervisor a uno de inferior categoría.

El 29 de mayo de 1978, antes de expirar el año para la prescripción de la acción por daños, (1) De Jesús Sierra falleció.

El 15 de enero de 1979, tras un intento tardío y fallido de impugnar en un pleito de clase el descenso de De Jesús Sierra, se presentó en nombre de éste una acción por tal motivo en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico. Los abogados de De Jesús Sierra no estaban conscientes de su muerte. A moción, luego, de la viuda e hijos —dos menores y dos adultos— de De Jesús Sierra el tribunal los sustituyó el 5 de mayo de 1980 como demandantes en el litigio. El 2 de julio siguiente el tribunal se revocó y desestimó el caso.

---

(1) Véanse el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298(2); *Chardón* v. *Fernández,* 454 U.S. 6 (1981).

El 8 de diciembre de 1980 los herederos de De Jesús Sierra instaron la causa presente en su propio nombre. El tribunal declaró prescrita la demanda el 7 de noviembre de 1983, lo que motivó el actual recurso ante la Corte de Apelaciones. La Corte nos certifica tres preguntas:

1. Under the circumstances of this case, is the filing of the action on January 15, 1979, in the name of the deceased to be considered the "institution before the courts" of that action for purposes of section 5303 [Art. 1873 del Código Civil] thus interrupting the running of the one-year statute of limitations?

2. If the filing of the action in the name of the deceased is not considered an "institution before the courts", is service of the defective complaint upon the defendants properly considered an "extrajudicial" claim of a creditor upon a debtor for purposes of section 5303 so that the present action is timely?

3. If the filing of the defective action and the service of the complaint are not properly considered either an "institution before the courts" or an "extrajudicial" claim under section 5303 so that the statute of limitations is not tolled, do the claims inherited by the minor children nonetheless survive by operation of P.R. Laws Ann. tit. 32, sec. 254? Certificación No. 83–1894, pág. 2.

## I

El Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5303, dispone:

La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor.

En *Durán Cepeda* v. *Morales Lebrón*, 112 D.P.R. 623 (1982), al explorar el significado de la frase "su ejercicio ante los tribunales", enfrentamos la necesidad de contestar la pregunta: ¿ante qué tribunales es que cabe actuar para interrumpir la

prescripción?(²) La pregunta en el caso de autos toca otro aspecto de la frase: ¿quién es el que debe ejercitar la acción? Examinemos en mayor detalle que en *Durán Cepeda* v. *Morales Lebrón*, supra, el historial y razón de ser de la prescripción extintiva en el Derecho Civil. Ello es importante para la exploración de la primera pregunta.

La prescripción liberatoria, la cual se remonta en el Derecho romano a una Constitución de Teodosio II de 424 *A.D.*, se incorporó pronto a una de las primeras fuentes del derecho español, el Código de Eurico de 476 *A.D.*, Art. 277(4), A. D'Ors, *Estudios Visigóticos (El Código de Eurico)*, Madrid, Ed. Sucs. Rivadeneyra, 1960, Vol. II, págs. 20–21.(³)

En el célebre *Fuero Juzgo* (el Libro de los Jueces o *Liber Iudiciorum*) de 634 *A.D.* se perfila ya con mayor nitidez el fundamento central de la prescripción extintiva. Se disponía en el Libro X, Tít. 2, Ley 4ta de la referida compilación goda:

> Muchas veces la negligencia, et non guardar las cosas que omne deve aver de derecho, desface las cosas que omne ha ciertas. Et assí la negligencia desface lo que pertenece por derecho de herencia, . . . et quando los XXX. annos son passados, que assí deven seer todos los pleytos finados, é acabados bien, as[s]í como si fuesse puesto por mandado de los reyes, mas pónelo por necesario que deve seer por natura. (Traducción del latín vulgar al castellano del siglo XIII.) *Fuero Juzgo o Libro de los Jueces*, Barcelona, Eds. Zeus, 1968, Vol. 2, págs. 204–205.

El castigo a la inercia prolongada en el ejercicio de un derecho aparece ya aquí como móvil para la aplicación de la prescripción liberatoria.

El concepto se amplía en las Siete Partidas (1256–1263 *A.D.*) y otros textos bajomedievales. En la Partida III, Tít.

---

(²) En *Durán Cepeda* v. *Morales Lebrón*, 112 D.P.R. 623 (1982), resolvimos que la demanda ante un foro incompetente surte efecto interruptivo.

(³) El Código de Eurico, traducción del latín vulgar, disponía en la parte citada que: "Y todos los otros litigios, justos o injustos, incluso los penales, que no fueron fallados en el plazo de treinta años, . . . o las deudas que no fueron cobradas, de ningún modo sean ya reclamados."

XXIX, Ley L, *Las Siete Partidas*, Madrid, Ed. Real Academia de la Historia, 1972, T. II, págs. 733-734, se expresa:

Moviéronse los sabios antiguamiente á establescer que las cosas que se podiesen ganar ó perder por tiempo por esta razón, porque cada un home podiese seer cierto del señorio que hobiese sobre las cosas; ca si esto non fuese, serien algunos homes negligentes et olvidarien sus cosas, et otros algunos las entrarien et las ternien como por suyas, et podrien ende nascer pleytos et contiendas en muchas maneras, de guisa que non serie home cierto cuyas eran. Et por ende por desviarlos de las misiones et de los daños que les podrien nascer de tales pleytos ó contiendas, tovieron por bien de señalar tiempo cierto sobre cada una cosa por que se podiese ganar ó perder si fuesen negligentes en las non requerir á aquellos cuyas fuesen podiéndolo facer, et otrosi porque el señorio de las cosas fuese en cierto cuyo era.

Véase también la Partida III, Tít. XXIX, Ley XX.

■ Desde al menos el siglo trece, por tanto, los fundamentos de la prescripción extintiva en el Derecho español adquieren su contorno moderno. La institución se basa en el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico, "el señorío de las cosas", al evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones.

La doctrina y la jurisprudencia españolas actuales siguen sosteniendo igual punto de vista. Véanse: F. Bonet Ramón, *Código Civil Comentado*, Madrid, Ed. Aguilar, 1962, pág. 1541; L. Díez-Picazo, *La Prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 27 y ss.; F. Sánchez Román, *Estudios de Derecho Civil*, 2da ed., Madrid, Sucs. Rivadeneyra, 1891, T. 3, pág. 262 y ss.; M. Albaladejo, *Derecho Civil*, 8va ed., Barcelona, Ed. Bosch, 1983, T. I, Vol. 2, págs. 484-487; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Eds. Pirámide, 1976, T. I, pág. 681 y ss.; D. Espín Cánovas, *Manual de Derecho Civil Español*, 6ta ed. rev., Madrid, Ed. Rev. Der. Privado, 1977, Vol. 1, págs.

483–484; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. 1, pág. 360 y ss.; J. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1973, T. XII, págs. 1013–1019, 1235–1236; J. Castán, *Derecho civil español, común y foral*, 13ra ed., Madrid, Ed. Reus, 1982, T. 1, Vol. 2, pág. 962; S. de 12 de marzo de 1958, núm. 22, LXV Rev. Gen. Leg. y Jur. 219; S. de 21 de abril de 1958, núm. 119, LXV Rev. Gen. Leg. y Jur. 1303; S. de 25 de enero de 1962, núm. 562, Aranzadi, XXIX Repertorio de Jurisprudencia 348; S. de 21 de diciembre de 1974, núm. 4936, Aranzadi, XLI Repertorio de Jurisprudencia 3765; S. de 9 de julio de 1975, núm. 2947, Aranzadi, XLII Repertorio de Jurisprudencia 2226 y S. de 16 de junio de 1976, núm. 2815, Aranzadi, XLII Repertorio de Jurisprudencia 2226 y S. de 16 de junio de 1976, núm. 2815, Aranzadi, XLII Repertorio de Jurisprudencia 2084.

La posición general de los comentaristas modernos en otros países extranjeros donde priva el Derecho civil es idéntica. Véanse: G. Marty y P. Raynaud, *Droit Civil*, París, Ed. Sirey, 1962, T. II, Vol. I, págs. 861–862; H., L. Mazeaud y J. Mazeaud, *Leçons de Droit Civil*, 6ta ed., París, Ed. Montchrestien, 1978, T. 2, Vol. 1, pág. 1154 *et seq.*; C. N. Aubry y Rau, *Droit Civil Français*, 7ma ed., París, Ed. Librairies Techniques, 1961, T. 2, pág. 440 n. 3; P. Martineau, *La Prescription*, Montréal, Les Presses de l'Université de Montréal, 1977, págs. 240–242; A. Scialoja y G. Branca, *Commentario del Codice Civile, Tutela dei Diritti*, Bologna, Ed. N. Zanichelli, 1977, T. 6, Art. 2934, págs. 202–204; W. De Barros Monteiro, *Curso de Direito Civil*, 20ma ed., Sao Paulo, Ed. Saraiva, 1981, Vol. 3, págs. 283–285; M. J. Argañarás, *La Prescripción Extintiva*, Buenos Aires, Tip. Ed. Argentina, 1966, págs. 6–8. (4)

---

(4) En la Luisiana se ha desarrollado una teoría distinta a la expuesta sobre el fundamento de la prescripción liberatoria y el tipo de acto necesario para causar la prescripción. Allí se ha resuelto, bajo unos hechos simi-

■ El concepto de la interrupción de la prescripción, derivado de la teoría de su basamento, tiene también raíces muy antiguas. La disposición del Art. 1873 de nuestro Código Civil referente al efecto interruptor del ejercicio de la acción ante los tribunales aparece claramente dibujada en la Partida III, Tít. XXIX, Ley XXIX:

> . . . Otrosi decimos que si alguno hobiese comenzado á ganar por tiempo cosa agena, que si aquel cuya era et contra quien la ganaba, le ficiese emplazar sobre ella por carta del judgador ó por portero, ó gela hobiese demandada en juicio, la ganancia del tiempo que habie comenzado contra él destájase et piérdese por ende. . . . Eso mesmo serie si el señor del debdo gelo demandase delante de amigos ó de avenidores.

Se advertirá el entronque entre el fundamento de la prescripción extintiva y los actos interruptores de ella. Mal puede castigarse la inercia o desidia del acreedor cuando éste intenta hacer valer su derecho. En tal caso se borra enteramente el plazo transcurrido y el tiempo ha de contarse de nuevo por entero una vez cese la causa interruptiva. Díez-Picazo, *op. cit.*, pág. 100.

■ Del fundamento de la prescripción se deriva también

---

lares, que "the elemental basis of legal interruption of liberative prescription in tort suits is informing the defendant of the legal demand". *Nini* v. *Sanford Brothers, Inc.*, 276 So. 2d 262, 266 (La. 1973). Véanse: *Jones* v. *Philco-Ford Corp.*, 441 So. 2d 1251 (La. App. 1983) ; *State Farm Mut. Auto. Ins. Co.* v. *Farnsworth*, 425 So. 2d 827 (La. App. 1983) ; *Lee* v. *State Farm Fire and Cas. Co.*, 400 So. 2d 330 (La. App. 1981); *Allstate Ins. Co.* v. *Theriot*, 376 So. 2d 950 (La. 1979) ; *Conner* v. *Continental Southern Lines, Incorporated*, 294 So. 485 (La. 1974).

La posición de la Luisiana no nos persuade en esta ocasión. De una parte, el Derecho español, como hemos visto, no la acepta y nuestra jurisprudencia ha seguido en este caso la tradición española. No vemos razones de orden público que nos induzcan a cambiar de rumbo. En segundo término no hemos hallado respaldo adecuado en el propio Derecho francés para la posición de la Luisiana, supuestamente derivada de esa fuente. Véanse: A. Colin y H. Capitant, *Traité de Droit Civil*, París, Ed. Dalloz, 1959, T. II, págs. 898–899; Baudry-Lacantinerie y Tissier, *Prescription* (J. Mayda, traductor), *Civil Law Translations*, St. Paul, West Pub. Co., 1972, Vol. 5, pág. 247, y los tratadistas franceses antes mencionados.

el concepto de quién ha de ejercer la acción obstativa. La ausencia de inercia, la voluntad de no perder su derecho debe manifestarse naturalmente por su titular o su representante autorizado. Asimismo, cuando el titular se abstiene de ejercer un derecho en daño a persona interesada, a ésta se le permite hacer valer la prescripción. (5)

Esta posición halla sólido apoyo en la doctrina y en la jurisprudencia. Díez–Picazo, *op. cit.*, pág. 42 n. 48, 45, 69 y ss.; M. Albaladejo, *Comentario al artículo 1.973 del Código Civil*, 61 Rev. Der. Privado 987, 989 (1977); Bonet Ramón, *op. cit.*, pág. 1581; Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, págs. 944–947; Espín Cánovas, *op. cit.*, págs. 485–486; Aubrey y Rau, *op. cit.*, pág. 477 *et seq.*; Marty y Raynaud, *op. cit.*, págs. 871–873; S. de 12 de octubre de 1891, núm. 54, LXX Juris. Civil 202; S. de 15 de febrero de 1899, núm. 64, LXXXVI Juris. Civil 294; S. de 31 de marzo de 1924, núm. 167, CLXI Juris. Civil 824; S. de 3 de mayo de 1957, núm. 2, LXI Rev. Gen. Leg. y Jur. 21; S. de 7 de enero de 1958, núm. 4, LXIV Rev. Gen. Leg. y Jur. 31; S. de 26 de diciembre de 1961, núm. 5176, Aranzadi, XXX Repertorio de Jurisprudencia 3318; S. de 6 de diciembre de 1968, núm. 5747, Aranzadi, XXXV Repertorio de Jurisprudencia 3848; S. de 25 y 27 de junio de 1969, núms. 3638 y 3668, Aranzadi, XXXVI Repertorio de Jurisprudencia 2465 y 2484; S. de 8 de marzo y 10 de octubre de 1972, núms. 1055 y 4232, Aranzadi, XXXIX Repertorio de Jurisprudencia 793 y 3146.

■ En *Feliciano* v. *A.A.A.*, 93 D.P.R. 655, 660 (1966), expresamos, a tono con parte de lo expuesto:

---

(5) El Art. 1837 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5248, equivalente al 1937 español, provee:

"Los acreedores y cualquiera otra persona interesada en hacer valer la prescripción, podrán utilizarla a pesar de la renuncia expresa o tácita del deudor o propietario."

Respecto a la interrupción por tercero, véase L. Díez-Picazo, *La Prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, págs. 103–104.

... el fundamento reconocido de la interrupción es la manifestación inequívoca de quién, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo.

En *Durán Cepeda* v. *Morales Lebrón*, supra, pág. 627, se le dio valor interruptivo a la presentación de una demanda ante un foro inapropiado por ser clara la voluntad del titular de hacer valer sus derechos.

■ La primera cuestión certificada ante este Tribunal es novel en este foro, mas los principios explicados hasta aquí permiten su contestación. La acción presentada el 15 de enero de 1979 en nombre del titular por sus representantes legales, quienes ignoraban su fallecimiento y quienes no ostentaban ni sabían si ostentarían la representación de los herederos, fue ineficaz en derecho para interrumpir la prescripción. Tal acción no constituyó un "ejercicio ante los tribunales" dentro del significado del Art. 1873 de nuestro Código Civil, ya que no se hizo en nombre de los verdaderos titulares del derecho, para entonces los herederos, ni evidencia voluntad alguna de parte de éstos de romper la inercia que nutre la prescripción liberatoria.

■ Tampoco eran los herederos las "personas interesadas" a que se refieren el Código y la doctrina. Estos terceros interesados, en cuya definición no nos toca entrar aquí en todo su detalle, pueden interrumpir la prescripción extintiva mediante actos propios o de sus representantes autorizados o actuaciones, como en el caso de la solidaridad, que les aprovechen por razón de derecho. Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304; Scaevola, *op. cit.*, págs. 945–947. En el caso presente la acción de 15 de enero de 1979 no representó gesto alguno de los herederos que revelase una intención impeditiva ni hemos hallado base adecuada en la legislación, la jurisprudencia o la doctrina, para concluir, como cuestión de derecho, que la acción de los representantes legales del finado benefició a los herederos. Adviértase que en este litigio, de

hechos tan singulares, la acción del finado estaba ya prescrita el 15 de enero de 1979. No se estaba ejerciendo en tal fecha la causa de acción a favor de los herederos, 32 L.P.R.A. sec. 254. El acto de los representantes legales del difunto era un acto ineficaz, vacío, enteramente desconectado de la voluntad de los nuevos titulares del derecho y desprovisto, por tanto, de efecto interruptor.

La contestación a la primera pregunta certificada por el honorable Tribunal de Apelaciones de Estados Unidos para el Primer Circuito es, por tanto, en la negativa.

## II

■ La segunda pregunta certificada es al efecto de si la acción incoada el 15 de enero de 1979 en nombre del finado constituye una "reclamación extrajudicial del acreedor" dentro del significado del Art. 1873 de nuestro Código Civil. [6] La contestación es igualmente negativa por las razones antes expresadas. Para que tenga efecto impeditivo, la acción tiene que partir "del acreedor", del titular del derecho, su agente o persona interesada a quien pueda atribuírsele intención interruptora manifiesta. Díez-Picazo, *op. cit.*, págs. 130–131; Scaevola, *op. cit.*, págs. 965–971; Puig Brutau, *op. cit.*, págs. 362–363.

## III

Resta la tercera pregunta, concerniente a la supervivencia o no de la acción heredada por los hijos menores de edad del causante.

El Art. 40 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. sec. 254, vigente desde 1904, dispone:

---

[6] La reclamación extrajudicial, como indicamos en *Durán Cepeda* v. *Morales Lebrón*, supra, pág. 626, es una causa de interrupción típicamente española, usualmente desconocida en otras jurisdicciones donde rige el Derecho Civil.

Si la persona con derecho a ejercitar una acción, que no sea la reivindicatoria de propiedad inmueble, fuese al tiempo de nacer la causa de acción:

1. Menor de edad; ... el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción.

Para la debida interpretación de este artículo y la contestación de la pregunta certificada deben recordarse otras disposiciones de ley. El Art. 41 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 255, provee:

Si una persona con derecho a ejercitar una acción muriese antes de terminar el período de prescripción requerido para deducir aquélla, y la causa de la acción subsistiera, los representantes de tal persona podrán ejercitar dicha acción después de la terminación de aquel período y dentro de un año de la defunción. ...

Nuestro Código Civil contiene otras disposiciones pertinentes. El Art. 610 (31 L.P.R.A. sec. 2092) decreta:

Los herederos suceden al difunto por el hecho solo de su muerte, en todos sus derechos y obligaciones.

El Art. 1832 (31 L.P.R.A. sec. 5243) a su vez disponía hasta 1930:

Los derechos y acciones se extinguen por la prescripción en perjuicio de toda clase de personas, inclusas las jurídicas, en los términos prevenidos por la ley.

Queda siempre á salvo á las personas impedidas de administrar sus bienes el derecho para reclamar contra sus representantes legítimos, cuya negligencia hubiese sido causa de la prescripción.

■ Las disposiciones citadas ilustran un fenómeno que en ocasiones se ha dado en el derecho puertorriqueño. Al importarse íntegramente vastos cuerpos jurídicos, como sucedió con los códigos procedimentales civiles de Idaho, Montana, California y Nueva York, fuentes de nuestro Código de Enjuiciamiento Civil, se afectaron, a veces inconscientemente,

zonas de nuestro antiguo derecho. De ahí el hecho curioso que, aunque la mayor parte del tema, antes el todo, de la prescripción se rige en Puerto Rico por el Código Civil, parte de la materia se gobierna por el Código de Enjuiciamiento Civil. La situación ha requerido una delicada labor de deslinde y engranaje de textos ocasionalmente dispares.

■ ¿Cuál es el alcance, por ejemplo, del Art. 40 del Código de Enjuiciamiento Civil? El Art. 40 nos dice que el tiempo que dure la minoría de edad no se considerará parte del tiempo fijado para empezar la acción. ¿El Art. 40 del Código de Enjuiciamiento Civil se aplica a las acciones heredadas por el menor o únicamente a sus acciones personales? En *Bussati* v. *Grace & Compania, Puerto Rico*, 396 F.2d 233 (1st Cir. 1968), se resolvió que el Art. 40 no se aplica a las acciones heredadas, por lo que la prescripción sigue corriendo en tales casos contra los menores.

*Bussati* v. *Grace & Compania, Puerto Rico*, supra, halla sólido apoyo bajo determinados estatutos y circunstancias. *Gómez* v. *Leverton*, 509 P.2d 735 (Ariz. 1973); *Harris* v. *McGovern*, 99 U.S. 161 (1878); *Commercial Bank & Trust Co.* v. *Jordan*, 278 P. 832 (Mont. 1929); *Whaley* v. *Catlett*, 53 S.W. 131 (Tenn. 1899); *Hill* v. *Beeler*, 286 S.W.2d 868 (Tenn. 1956). La situación estatutaria ha arrojado resultados distintos en otras jurisdicciones. *Cross* v. *Pacific Gas & Electric Company*, 388 P.2d 353 (Cal. 1964); *Nolan* v. *Transocean Air Lines*, 276 F.2d 280 (2d Cir. 1960), 290 F.2d 904 (2d Cir. 1961), revocado por otros fundamentos, 368 U.S. 901 (1961); *Switzer* v. *Reynolds*, 606 P.2d 244 (Utah 1980); *Ex'ors of Everett* v. *Adm'rs of Whitfield*, 27 Ga. 133 (1858); *Wilson* v. *Jackson*, 43 Ga. 288 (1871).

Si atendemos la curiosa condición de este aspecto, de la prescripción liberatoria en Puerto Rico pueden surgir interrogantes, sin embargo, sobre la norma de *Bussati* v. *Grace & Compania, Puerto Rico*, supra. En primer término, *Bussati* se apoya en *Valentín* v. *Jaime*, 86 D.P.R. 774 (1962), caso

que no resuelve o discute la cuestión que nos ocupa: la aplicabilidad o no del Art. 40 a las acciones heredadas.

En segundo lugar, la propia atmósfera legal en que se adopta el Art. 40 del Código de Enjuiciamiento Civil de Puerto Rico —que equivale a la inserción dentro de una matriz civilista de un principio derivado de uno de los códigos de Field— provocó problemas que encaminó nuestra jurisprudencia y nuestra legislación por cauces diferentes. El Art. 40 chocaba o aparentaba chocar, al menos parcialmente, con el Art. 1832 de nuestro Código Civil, antes citado, que tajantemente sentaba que los derechos y acciones se extinguen por la prescripción en perjuicio de toda clase de personas, excepto que los impedidos de administrar sus bienes tendrían derecho a reclamar contra sus representantes legítimos cuya negligencia hubiese sido causa de la prescripción. En *Ibáñez* v. *Diviñó*, 22 D.P.R. 518 (1915), este Tribunal advirtió la incompatibilidad y resolvió que el Art. 40 derogó el Art. 1832 (entonces designado el 1833).

En 1930, no obstante, ocurrió algo de extraordinario interés. Mediante la Ley Núm. 48 de 28 de abril de ese año, la Asamblea Legislativa enmendó el Art. 1832, sin entenderlo derogado —acto al que tenía perfecto derecho, pues el problema consistía en la interpretación de la intención parlamentaria. La enmienda consistió en la eliminación del segundo párrafo, el referente a la acción concedida a los impedidos contra sus representantes legítimos. ¿Qué motivó a la Asamblea Legislativa a efectuar esta enmienda? No hay constancia en los records, pero es de suponer que la Asamblea Legislativa entendió, bien o mal, que el Art. 40 proveía un mejor remedio para los impedidos, lo que hacía innecesario el segundo párrafo del Art. 1832. Es así como, a partir de 1930 este Tribunal llega a un resultado distinto al que se alcanzaría más tarde en *Bussati* v. *Grace & Compania, Puerto Rico*, supra. En *Vidal* v. *Monagas*, 66 D.P.R. 622 (1946), confirmado en 170 F.2d 99 (1st Cir. 1948), *cert.* denegado, 335 U.S. 911

(1949), se trataba de una acción heredada por un menor —la reclamación de la parte de su padre en la liquidación de una sociedad. Se resolvió, aunque sin discutir expresamente la cuestión precisa analizada en *Bussati* v. *Grace & Compania, Puerto Rico*, supra, que el término prescriptivo no empezaba a contar contra el menor hasta que éste llegase a la mayoría de edad. Para la discusión de las consideraciones de orden público envueltas en la aprobación de la enmienda de 1930, véase *Márquez* v. *Tribl. Superior*, 85 D.P.R. 559 (1962).

Mas, en verdad no estamos precisados a resolver que *Bussati* v. *Grace & Compania, Puerto Rico*, supra, no representa la interpretación correcta del Art. 40 del Código de Enjuiciamiento Civil. Aun presumiendo que el Art. 40 no se aplica a las acciones heredadas por los menores y otros impedidos, ello no significa que éstos están desprovistos de todo derecho en situaciones como la presente. Volvamos a la enmienda de 1930 al Art. 1832. La acción de la Asamblea Legislativa puede interpretarse en varias formas. O la Asamblea Legislativa creyó correctamente que al enmendar el Art. 1832 estaba protegiendo a los impedidos, vía el Art. 40, en todo género de acciones, sin exceptuar las heredadas, o la Asamblea Legislativa se equivocó sobre el alcance real del Art. 40, en cuyo caso creó una laguna legal sobre las normas de prescripción que deben regir en Puerto Rico las acciones heredadas por menores y otros incapacitados. Creó una laguna legal porque mal puede interpretarse que la enmienda de 1930, si se presume la corrección de *Bussati* v. *Grace & Compania, Puerto Rico*, supra, tuvo por fin despojar a los menores y otros impedidos aun del exiguo remedio, criticado en *Márquez* v. *Tribl. Superior*, supra, que les proveía el Código Civil contra sus representantes legítimos en el caso de las acciones heredadas.

Es nuestra obligación llenar tal laguna legal, hasta tanto se pronuncie la Asamblea Legislativa, conforme el mandato del Art. 7 del Código Civil, 31 L.P.R.A. sec. 7.

A tal efecto, valga con referirnos a la figura de la suspensión de la prescripción, institución típica del Derecho Civil y diferente a la de la interrupción. (⁷) El Art. 2252 del Código Civil francés ilustra el efecto de la prescripción respecto a los menores al disponer que "La prescripción no corre contra los menores no emancipados y los mayores bajo tutela . . .". (Traducción nuestra.) La negligencia de sus representantes no puede afectarlos. La prescripción se suspende durante todo el período de incapacidad del menor. Mazeaud y Mazeaud, *op. cit.*, págs. 1165–1167. La suspensión de la prescripción, además, aprovecha al menor no sólo en el caso de sus causas personales, sino también en el de las heredadas. Aubry y Rau, *op. cit.*, pág. 452. Al mismo efecto: Fuzier-Herman, *Code Civil Annoté*, París, Ed. Sirey, 1949, T. 7, pág. 972; F. Laurent, *Principios de Derecho Civil Francés*, Puebla, Ed. Barroso, Hermano y Comp., 1900, T. XXXII, págs. 74–75; Baudry-Lacantinerie y Tissier, *Prescription* (J. Mayda, traductor), *Civil Law Translations*, St. Paul, West Pub. Co., 1972, Vol. 5, pág. 225. Aunque en modo diferente, la suspensión es reconocida en Italia y Portugal, entre otros países. Scialoja y Branca, *op. cit.*, pág. 246 y ss.; F. Andrade Pires De Lima y J. De Matos Antunes Varela, *Código Civil Anotado*, Coímbra, Ed. Coímbra, 1967, Vol. I, Art. 320, págs. 207–208. En varios países de Latinoamérica prevalece la posición francesa. D. Antokoletz, *Código Civil*, Buenos Aires, Ed. J. Roldán & Cía., 1931, T. II, Art. 3966, págs. 997–998; el Art. 3966 del Código original fue enmendado, G. A. Borda, *Tratado de Derecho Civil*, 4ta ed., Buenos Aires, Ed. Perrot, 1975, T. II, Arts. 819–820, págs. 30–31; *Código Civil*, Santiago, Ed. Jur. Chile,

---

(⁷) Cuando la prescripción se *interrumpe*, el plazo comienza a contar de nuevo al cesar la causa impeditiva, mas cuando se *suspende* el cómputo tan sólo se reanuda. C. M. Aubry y Rau, *Droit Civil Français*, 7ma ed., París, Ed. Librairies Techniques, 1961, T. 2, págs. 462, 482–484; W. Rodys, *Traité de Droit Civil du Québec*, Montréal, Ed. Wilson et Lafleur, 1958, T. 15, págs. 190–192; S. de 22 de diciembre de 1950, núm. 101, XXXII Rev. Gen. Leg. y Jur. 1023.

1977, Art. 2509, pág. 576; *Código Civil Brasileiro*, 31ra ed., Sao Paulo, Ed. Saraiva, 1981, Art. 5, pág. 16. Adoptamos la regla general francesa de la suspensión de la prescripción contra los menores y otros impedidos, dada la laguna surgida en 1930 al eliminarse la regla española con la supresión del segundo párrafo del Art. 1832 del Código Civil. La norma francesa, valga apuntar, si bien muy distinta al derecho español actual es enteramente acorde con la posición española de siglos. Véanse Lib. II, Tít. XI, Ley 3 del Fuero Real; Partida III, Tít. XXIX, Ley VIII.

La contestación a la tercera pregunta es que, bien bajo las disposiciones del Art. 40 del Código de Enjuiciamiento Civil o conforme las normas relativas a la suspensión, la acción heredada por los menores en este caso no está prescrita.

*Se dictará certificación al efecto.*