Brau Ramírez, Juez Ponente
*966 TEXTO COMPLETO DE LA RESOLUCION
i
La parte peticionaria, Corporación del Fondo del Seguro del Estado (Estado Libre Asociado de Puerto Rico) recurre de una resolución emitida el 20 de junio de 1996 por el Tribunal de Primera Instancia, Sala Superior de Humacao. Mediante dicho dictamen, el Tribunal denegó una moción de sentencia sumaria presentada por la peticionaria en la que se solicitaba la desestimación, por el fundamento de prescripción, de la demanda por daños y perjuicios presentada contra la peticionaria por los recurridos Radamés Ramírez Doble, Radamés Ramírez Ortiz y Carmen L. Doble Figueroa.
Denegamos el auto solicitado, si bien por fundamentos distintos a los expresados por el Tribunal de Primera Instancia.
II
El presente recurso tiene su origen en el tratamiento médico brindado por el Fondo del Seguro del Estado al recurrido Sr. Radamés Ramírez Doble el 16 de septiembre de 1993. Ese día, el recurrido compareció al Fondo por motivo de un esguince en el hombro y brazo izquierdo ocurrido en el curso de su empleo en el Hospital Ryder de Humacao. Fue atendido por la Dra. Edna Colón. Como parte de su tratamiento, se le recetó el anti-inflamatorio conocido como Indocín de 75 mgs.
El 20 de septiembre de 1993, los padres del recurrido, Radamés Ramírez Ortiz y Carmen Doble Figueroa, comparecieron al Fondo, alegando que el Indocín recetado le había causado una reacción adversa a éste, y que como producto de esto, el recurrido se había visto envuelto en un incidente de tráfico con un agente del orden público y había sido detenido, al estar incoherente y no poder ver bien. La Dra. Colón examinó los medicamentos que le habían sido administrados al recurrido y, alegadamente, manifestó a los recurridos que esos no eran los medicamentos que ella le había recetado. La Dra. Colón consultó el Physician's Desk Reference Book sobre la medicina que había tomado el recurrido y le informó a sus padres que el medicamento en cuestión producía efectos secundarios tales como alucinaciones e insomnio.
El 25 de septiembre de 1993, luego de otro incidente en que manifestó conducta violenta, el recurrido compareció ante el Dr. Héctor Torres, médico privado con especialidad en siquiatría, quien le explicó que los medicamentos recetados eran muy fuertes y que le habían provocado una intoxicación. El Dr. Torres le recetó tranquilizantes.
Durante los días siguientes, se produjeron nuevos incidentes de violencia. Al recurrido le practicaron, además, una serie de exámenes médicos ordenados en la Clínica Font Martelo en Humacao. Dichos exámenes revelaron alteraciones en el hígado del paciente.
Para el 15 de octubre de 1993, la condición del paciente se había deteriorado al punto de que la Dra. Mildred Jiménez de la Junta Siquiátrica del Fondo se vio precisada a recluirlo en el Mepsi Center. El recurrido permaneció recluido hasta el 12 de noviembre de 1993.
El 14 de enero de 1994, los recurridos enviaron una notificación al Secretario de Justicia, conforme al art. 2A de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. see. 3077a, en la que reclamaban por los daños sufridos por el recurrido Radamés Ramírez Doble. La carta expresaba, entre otras cosas que:

"Los reclamantes han conocido la causa de los daños reclamados para la fecha del 17 de diciembre de 1993 siendo la misma una intoxicación al medicamento recetado en una dosis y manera no recomendada y también por no haberse obtenido un adecuado historial médico del paciente por los médicos del Fondo que lo atendieron cuando originalmente éste acudió al dispensario y por no haber observado al paciente adecuadamente luego de que éste comenzara el tratamiento."

La comunicación expresaba que los daños sufridos se valoraban en $75,000.00 para cada uno de ellos.
El 18 de enero de 1994, el recurrido Radamés Ramírez Doble fue dado de alta por el Fondo.
*967 Posteriormente, los recurridos consultaron al perito médico de Florida, Dr. Gerald Sokol, en tomo a si el tratamiento médico del recurrido había sido conforme a las normas de la profesión. El 28 de octubre de 1994, dicho perito emitió un informe pericial en el que señalaba la existencia de negligencia.
El 13 de diciembre de 1994, los recurridos presentaron la presente demanda por daños y perjuicios contra la parte peticionaria y contra la Dra. Edna Colón, alegando que los daños sufridos por éstos fueron ocasionados por la negligencia de la Dra. Colón al prescribir el medicamento Indocín, el cual era peligroso, en una dosis demasiado alta y sin haber tomado un historial adecuado del paciente.
Luego de otros incidentes, la parte peticionaria presentó una moción de sentencia sumaria alegando que la demanda estaba prescrita, conforme al art. 1868 del Código Civil, 31 L.P.R.A. see. 5298, porque había transcurrido más de un año desde la fecha del surgimiento del daño en septiembre de 1993 hasta la fecha de presentación de la acción en diciembre de 1994. La Dra. Colón, por su parte, presentó una solicitud de desestimación por un fundamento similar. Alegó que la parte recurrida había tenido conocimiento de su causa desde el 25 septiembre de 1993, fecha en que el Dr. Torres le había explicado que la reacción sufrida por el recurrido se debía al Indocín recetado.
La parte recurrida se opuso a estas mociones, alegando que no fue hasta el recibo del informe del Sr. Sokol, en octubre de 1994, que dicha parte conoció del autor del daño y que antes de esto no había estado en posición de presentar su demanda.
El 14 de junio de 1996, mediante la resolución recurrida, el Tribunal de Primera Instancia denegó la moción de la parte peticionaria. Concluyó la distinguida Sala que "[e]n el caso ... de las reclamaciones por mala práctica de la medicina, el término prescriptivo del año no comienza a contarse hasta que el perjudicado conoce que el daño fue probablemente ocasionado por una impericia profesional." Añadió:

"El 28 de octubre de 1994, el Dr. Gerald A. Sokol rindió un informe pericial a los demandantes basado en el expediente médico del Sr. Ramírez, en el que concluye que el [Indocín] ha sido reportado como un causante de aberraciones siquiátricas. En este caso el perito sostiene que el demandante tiene un historial de esquizofrenia crónica. Según él, una droga como el [Indocín] debe ser evitada, por existir otros anti-inflamatorios que no tienen los efectos siquiátricos secundarios que produce el [Indocín]. El Dr. Sokol entiende que si la demandada hubiera prescrito otro de estos medicamentos anti-inflamatorios, la aguda crisis sicótica sufrida por el demandante, desde un inicio de estos episodios de esquizofrenia se hubiese evitado. Es en este momento que la demandante conoce con certeza la procedencia de los daños y a partir del cual comenzó a correr el término prescriptivo de un año para instar su reclamación.

La demandada sostiene que los demandantes conocían la procedencia desde el 25 de septiembre de 1993, cuando el siquiatra Héctor Torres les comunicó que las pastillas recetadas por la Dra. Edna Colón eran demasiado fuertes y le ocasionaron una intoxicación. No podemos concluir de este hecho que los demandantes tuvieran conocimiento en ese instante de una posible impericia médica. El Dr. Torres en ningún momento le expresó que la co-demandada actuara negligentemente o que prescribiera una dosis errónea del medicamento."

Insatisfecha con este dictamen, la parte peticionaria acudió ante este Tribunal.
ni
En su recurso, la parte peticionaria plantea que incidió el Tribunal de Primera Instancia al denegar su moción de sentencia sumaria.
El término prescriptivo para las acciones de daños y perjuicios en nuestra jurisdicción es el de un (1) año establecido por el art. 1868 del Código Civil, L.P.R.A. see. 5298. Dicho término empieza a decursar "desde que lo supo el agraviado". Borg Warner International Corp. v. Quasar Company, _ D.P.R. _ (1995), 95 J.T.S. a la pág. 722; Ojeda Ojeda v. El Vocero, Inc., _ D.P.R. _ (1994), 94 J.T.S. 131, a la pág. 331; Cintrón v. Estado Libre Asociado, _ D.P.R. _ (1990), 90 J.T.S. 128, a la pág. 8,232. Colón Prieto v. Géigel, 115 D.P.R. 232, 243 (1984).
*968 El conocimiento requerido por el precepto es el del daño. Ojeda Ojeda v. El Vocero Inc., 94 J.T.S. 131, a la pág. 331; Ortega v. Pou, D.P.R. _ (1994), 94 J.T.S. 51, a la pág. 11,781; véanse, además, Revista de Derecho Privado (M. Albaladejo y S. Díaz Alabart, directores), Comentarios al Código Civil y Compilaciones Forales, Tomo XXV, Vol. 2, Editorial Revista de Derecho Privado, 1994, a las págs. 435 y ss.; Manresa, Código Civil Español, Tomo 12, sexta edición, Madrid, Reus, 1973, a la pág. 1194; Diez Picaso, La Prescripción en el Código Civil, Bosch, Barcelona, a la pág. 240 ("[l]a prescripción empieza a correr desde que el perjudicado tuvo conocimiento del daño").
No obstante, el Tribunal Supremo de Puerto Rico ha expresado que, además del conocimiento del daño, es necesario que se conozca quién ha sido su autor, de modo que el titular esté en posición de ejercitar su causa de acción. Véanse, Ojeda Ojeda v. El Vocero, Inc., supra; Vega Lozada v. J. Pérez _ D.P.R. _ (1994), 94 J.T.S. 56, a la pág. 11,806; Toledo Maldonado v. Cartagena Ortiz, _ D.P.R. _ (1992), 92 J.T.S. 173, a la pág. 10,228; Colón Prieto v. Géigel, 115 D.P.R .232, a la pág. 247.
Descansando en este pronunciamiento, el Tribunal de Primera Instancia razonó que hasta que los recurridos no recibieron el informe del Dr. Sokol, no tuvieron conocimiento de su daño. El Tribunal aparentemente estimó que para que el período prescriptivo hubiese comenzado a decursar, era necesario que los recurridos hubiesen recibido una opinión de algún perito señalando que la Dra. Colón había actuado de forma negligente. Como el Dr. Torres se había limitado a señalar que la reacción del recurrido se había debido a una intoxicación con Indocín, sin aseverar que la Dra. Colón había incurrido en impericia, el Tribunal consideró que dicha información había sido insuficiente para que los recurridos hubieran conocido de su daño. No estamos persuadidos de que este análisis sea exacto.
El conocimiento requerido por el art. 1868, según indicado, es del daño sufrido por la parte perjudicada, no de la negligencia de la parte actora.
Cabe señalar que la aseveración de que una persona ha actuado de forma negligente en una situación particular significa que dicha parte ha violado el deber de cuidado requerido para las circunstancias en cuestión, lo que es propiamente una conclusión de derecho. Aunque una parte de ordinario puede conocer cuándo ha sido lesionada, estimar su propio daño, y saber quién lo ha provocado, no siempre está en posición de conocer los detalles específicos de la conducta que le produjo tal condición.
Cuando una parte sufre un accidente de automóvil o se cae de una escalera mecánica, por ejemplo, conoce que ha sufrido un "daño", así como la agencia que lo ha producido, aunque carezca del conocimiento pericial que le permitiría establecer que el accidente se produjo por una falla en el sistema de freno hidráulico del otro vehículo o en el sistema de correas de la escalera.
La práctica en nuestra jurisdicción, que conozcamos, no ha sido requerir, para este tipo de casos, que la parte perjudicada conozca los detalles de la negligencia de la parte actora, para establecer que ha comenzado a decursar el período prescriptivo dispuesto por el art. 1868. Al contrario, de ordinario se infiere que el conocimiento de la lesión es contemporáneo a su producción, si bien esa inferencia pueda ser refutable. Véase, Ojeda Ojeda v. El Vocero, Inc., 94 J.T.S. 131, a la pág. 335. Según observa el profesor Diez Picaso:
"debe presumirse un conocimiento instantáneo por el perjudicado respecto al daño que se la haya ocasionado... incluso, un retraso negligente en llegar a poseer este conocimiento no debe ser tenido en cuenta. De aquí que parezca que la carga de la prueba de la determinación de este momento del conocimiento del daño debe atribuirse al demandante, cuando éste afirme haber alcanzado este conocimiento con posterioridad al daño mismo." Supra, a la pág. 240.
Similarmente, en los casos de impericia médica, diferimos de la apreciación de la ilustrada Sala de Instancia de que, para que comience a computarse el período prescriptivo, deba contar la parte perjudicada con una opinión pericial imputando negligencia al facultativo. En la práctica, la posición asumida por el Tribunal de Primera Instancia conllevaría denegar el derecho de la prescripción a la mayoría de los facultativos demandados en acciones de impericia. No percibimos base, sin embargo, *969 para conceder un trato desigual a este tipo de casos y exigir un tipo de conocimiento que no se exige en otros contextos de demandas bajo el artículo 1802 del Código Civil.
Opinamos que, de ordinario, cabe inferir que una persona que ha sufrido un resultado adverso e inesperado como parte de un tratamiento médico, está en posición de reconocer su daño. Resulta ficticio aseverar que una persona que ha quedado paralizada'como consecuencia de una operación o que, como en el presente caso, ha sufrido una intoxicación como consecuencia de una medicina no pueda saber que tiene una posible causa de acción contra el médico que lo operó o le prescribió tal medicina. 
En la situación de autos, consideramos que el período prescriptivo comenzó a decursar, cuando menos, el día 25 de septiembre de 1993, cuando los recurridos fueron informados por el Dr. Torres que la conducta del recurrido había sido provocada por una intoxicación con el Indocín recetado. Incluso, podría imputarse dicho conocimiento desde la visita a la Dra. Colón del 20 de septiembre de 1993, en que ésta señaló que el Indocín producía este tipo de efectos secundarios y ordenó que se descontinuara esta medicina.
No obstante, entendemos que procede sostener la determinación del Tribunal de Primera Instancia por otros fundamentos. En particular, consideramos que la notificación enviada por los recurridos al Secretario de Justicia el 14 de enero de 1994 era suficiente para interrumpir el período prescriptivo. Véanse, García Aponte v. Estado Libre Asociado _ D.P.R. _ (1994), 94 J.T.S. 14, a la pág. 11,510; Rivera Castillo v. Municipio de San Juan, _ D.P.R. _ (1992), 92 J.T.S. 70, a la pág. 9,566; Zambrana Maldonado v. Estado Libre Asociado, _ D.P.R. _ (1992), 92 J.T.S. 12, a la pág. 9,171. 
Dicha notificación expresaba de forma clara e inequívoca, la voluntad de los recurridos de presentar su reclamación. Zambrana Maldonado v. Estado Libre Asociado, supra, Díaz de Diana v. A.J.A.S. Ins. Co., 110 D.P.R. 471, 477 (1980). Su efecto fue que se comenzara a contar nuevamente el término prescriptivo. García Aponte v. Estado Libre Asociado, 94 J.T.S. 14, a la pág. 11,510; Silva Wiscovich v. Weber Dental Mfg. Co., 119 D.P.R. 550, 562 (1987). Habiendo sido presentada la demanda el 13 de diciembre de 1994, la misma resultaba oportuna.
La parte peticionaria alega que la notificación al Secretario de Justicia no le era imputable ya que, por virtud de la Ley Núm. 83 de 29 de octubre de 1992, el Fondo del Seguro del Estado se convirtió en una corporación pública, separada del E.L.A. No obstante, los cambios en dicha entidad no entraron finalmente en vigor sino hasta ciento ochenta (180) días después del 1ro de noviembre de 1993, esto es, luego de la notificación y de los hechos de este caso. Véase, 11 L.P.R.A. sec. 1, Nota de historial (Supl. 1996), Leyes de Puerto Rico, a la pág. (1993); Leyes de Puerto Rico, a la pág. 441 (1992).
Cabe señalar además que, al momento de los hechos, el E.L.A. respondía por la actuaciones de la Dra. Colón, por virtud del artículo 1803 del Código Civil, 31 L.P.R.A. see. 5142. Dicha reponsabilidad, desde luego, es solidaria con cualquier responsabilidad del Fondo. La notificación al E.L.A., de este modo, resultaba eficaz para interrumpir el término contra el Fondo. Véase, Rivera Castillo v. Municipio de San Juan, 92 J.T.S. 70, a la pág. 9,566; Arroyo v. Hospital La concepción, _ D.P.R. _ (1992), 92 J.T.S. 66, a las págs. 9,536-37.
Por otro lado, en cuanto al recurrido Radamés Ramírez Doble, observamos que éste se vio incapacitado durante una porción del período en cuestión, lo que suspendía el transcurso del plazo prescriptivo durante dicho tiempo. Véase, De Jesús v. Chardón, 116 D.P.R. 238, 253-254 (1985). Aunque la parte peticionaria ha cuestionado la cronología específica de dicha incapacidad, parecería ser que este es un punto sobre el que existe controversia real sustancial entre las partes, lo que excluiría que se dicte la sentencia sumaria solicitada. Véase, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720-721 (1986).
Por los fundamentos expresados, se deniega el auto solicitado.
*970 Lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 39
1. La fecha de la carta erróneamente indicaba que la misma había sido enviada el 14 de enero de 1993. La fecha es la expresada en el texto.
2. La doctrina invocada por el Tribunal de Primera Instancia fue originalmente enunciada por el Tribunal Supremo de Puerto Rico en Colón Prieto v. Géigel, 115 D.P.R. 232. Allí, sin embargo, se trataba de un cirujano dental quien alegadamente había ocultado la verdadera naturaleza de una lesión a un paciente, haciéndole creer que se trataba de un dolor secundario a una intervención, cuando en realidad provenía de una cortadura de un nervio, producida negligentemente.
Es evidente que, cuando ha habido ocultación activa de un daño, un demandado está impedido de invocar la defensa de prescripción. Ello, sin embargo, no implica la eliminación de este derecho en los casos en que dicha ocultación no ha existido.
3. Este Tribunal está consciente de que, al denegar la moción de sentencia sumaria de la parte peticionaria, el Tribunal de Primera Instancia no tuvo ante sí la carta enviada al Secretario de Justicia, la cual fue incluida por la parte peticionaria el 1 de julio de 1996. Hemos optado, sin embargo, por considerar la misma, toda vez que este documento ya obra en el récord y que la revisión de este dictamen interlocutorio se produce contra el mismo y no contra sus fundamentos.