RAMÓN GARCÍA SANTIAGO, ETC., peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. SALVADOR ACEVEDO COLÓN, JUEZ, demandado; MANUEL RIVERA TORRES, interventor.

*Número:* O-75-197        *Resuelto:* 8 de octubre de 1975

*Miriam Naveira de Rodón, Procuradora General* y *Adolfo J. Vila, Procurador General Auxiliar,* abogados del peticionario; *Miguel A. Velázquez Rivera* y *Graciany Miranda Marchand,* abogados del interventor.

RESOLUCIÓN

Por hallarse igualmente dividido este Tribunal en cuanto a la disposición final del caso, según surge de las ponencias

del Juez Presidente, Señor Trías Monge y los Jueces Asociados Señores Torres Rigual, Díaz Cruz y Negrón García, queda en pie la sentencia dictada por el Tribunal Superior.

Lo acordó el Tribunal y certifica el Secretario.

(Fdo.) Angel G. Hermida

*Secretario*

—O—

Opinión emitida por el Juez Presidente, Señor Trías Monge, con la que concurren los Jueces Asociados, Señores Martín e Irizarry Yunqué.

San Juan, Puerto Rico, a 8 de octubre de 1975

El Departamento de Servicios Sociales acordó un contrato de servicios con el señor Manuel Rivera Torres, periodista, para la dirección, coordinación y supervisión por éste del Plan de Divulgación del Programa de Alimentos y el desempeño de otras funciones afines. La duración del contrato era desde el 1 de abril de 1974 hasta el 30 de junio del mismo año. Luego el contrato se extendió hasta el 30 de junio de 1975. El convenio estipulaba que "Las Partes podrán dar por terminado el presente contrato meramente notificando de su intención, quince (15) días naturales antes de la fecha en que quedará terminado. . . ."

El 22 de enero de 1975 el Departamento le comunicó al señor Rivera Torres la terminación de su contrato, invocando la cláusula citada. Pocos días más tarde, el señor Rivera Torres instó demanda contra el señor Secretario de Asuntos Sociales, alegando en esencia que la acción tomada se debía a haber emitido el demandante expresiones, difundidas a los medios noticiosos, respecto a las normas que debían implantarse para mejorar la administración pública y recabando del gobierno la reparación de ciertos agravios. Solicitaba el señor Rivera Torres la expedición de un *injunction* preliminar para

que el demandado se abstuviese de cancelar su contrato e impedirle ejercer sus derechos constitucionales.

El demandado interpuso moción de sentencia sumaria, basada en la cláusula del contrato referente a la rescisión del mismo con notificación de quince días. Se acompañó tan sólo copia del contrato. El demandante radicó al ventilarse esta moción una declaración jurada en la que reafirmaba que los motivos para la terminación del contrato "fueron los de tomar acción punitiva contra mí por razón de expresiones públicas que, en el ejercicio de los derechos que me concede la Constitución de Puerto Rico, el suscribiente había hecho a los medios noticiosos en el país." El demandado no contradijo esta declaración.

El tribunal de instancia denegó la moción de sentencia sumaria y el demandado acudió ante nos en petición de *certiorari*. Argumenta que aun asumiendo que sus motivaciones sean las alegadas, ello es irrelevante, ya que las partes se otorgaron la facultad recíproca de terminar el contrato. No existe, por tanto, a su juicio, controversia genuina sobre los hechos.

No le asiste razón al peticionario. Surge de los autos una clara y vital controversia sobre los hechos que debe dilucidarse en juicio plenario.

El servicio público no es una dádiva o merced del Estado que conlleve la suspensión de los derechos constitucionales de sus integrantes. Cambia el contexto para su ejercicio y, concebiblemente, aun su contorno y sustancia cuando no haya otro modo de servir, sin exceso o amplitud indebida, legítimos intereses gubernamentales de especial importancia y mayor peso que los intereses individuales que se le enfrenten. Las condiciones que se le impongan al servicio público deben sujetarse siempre, no obstante, al más riguroso escrutinio para medir su legitimidad a la luz del referido criterio.

Hace muchos años la norma era distinta. Se consideraba el servicio público un privilegio, anulable o limitable a entera

discreción del Estado. Esta doctrina recibió hace tiempo piadosa sepultura. Van Alstyne, *The Demise of the Right— Privilege Distinction in Constitutional Law*, 81 Harv. L. Rev. 1439 (1968) ; Notes, *Implied Contract Rights to Job Security*, 26 Stan. L. Rev. 335 (1974) ; Comments, *Patronage Dismissals: Constitutional Limits and Political Justifications*, 41 U. of Chi. L. Rev. 297 (1974). En su lugar se desarrolló la teoría vigente sobre la imposición de condiciones inconstitucionales al empleo público. Para su análisis en los casos de violaciones a la libertad de expresión, véase: Bruff, Harold H., *Unconstitutional Conditions Upon Public Employment: New Departures in the Protection of First Amendment Rights*, 21 Hastings L.J. 129 (1969).

En *Perry* v. *Sindermann*, 408 U.S. 593 (1972), el Tribunal Supremo de Estados Unidos se enfrentó a una situación análoga a la presente. Una institución escolar pública rehusó renovar el contrato de un profesor. Este no disfrutaba de derechos de permanencia o contractuales que exigiesen la reanudación de sus servicios. El profesor reclamó la continuación de su empleo, no obstante, aduciendo que su despido se debió a críticas públicas formuladas por él contra las autoridades escolares. El Tribunal de Distrito dictó sentencia sumaria en su contra y el Tribunal Supremo revocó por considerar que existía una controversia genuina sobre si la acción gubernamental se apoyaba o no en una base impermisible: la limitación de los derechos constitucionales del recurrente.

Con posterioridad a *Perry* se ha reafirmado la doctrina que si existe una disputa genuina sobre la infracción del derecho a la libertad de palabra en situaciones de esta índole no procede una moción de sentencia sumaria sin explorar ampliamente los hechos en que alegadamente se funda dicha controversia. *Hirsch* v. *Green*, 368 F.Supp. 1061, 1067 (D. Md. 1973) ; *Wildeman* v. *Nelson*, 467 F.2d 1173, 1176 (8th Cir. 1973).

El Art. II, Sec. 3 de la Constitución de Puerto Rico protege la libertad de expresión en modo por lo menos tan amplio como la Enmienda Primera a la Constitución de Estados Unidos. El alcance de la Ley Núm. 12 de 8 de agosto de 1974, que permite la utilización del auto de *injunction* en los tribunales del Estado Libre Asociado para impedir la infracción de derechos, privilegios o inmunidades garantizados por la Constitución o las leyes de Puerto Rico o la Constitución y las leyes de Estados Unidos, no es ciertamente menor que el de la legislación equivalente norteamericana. 17 Stat. 13, 42 U.S.C.A. 1983. La persona agraviada en el presente litigio ha formulado serias alegaciones al efecto de que la terminación de su contrato se debió a motivos impermisibles bajo la Constitución y las leyes del Estado Libre Asociado de Puerto Rico. Desconocemos si esta imputación es cierta. La misma plantea, sin embargo, una disputa sobre los hechos, de gran relevancia jurídica, que exige dilucidación en procedimientos ulteriores y prohíbe la decisión de este litigio por la vía sumaria.

Valga aclarar, por último, que el hecho de que el servidor público envuelto en esta causa rindiese su labor en virtud de un contrato y no de un nombramiento no afecta el análisis que antecede. El manto de esta distinción es demasiado corto y raído para ahogar la libertad de palabra. La libertad de expresión no es renunciable ni objeto de mercadeo contractual. Asiste a todos los servidores públicos en la medida descrita, independientemente de la clasificación de personal a que pertenezcan o su nexo jurídico con el Estado. *Shelton* v. *Tucker*, 364 U.S. 479, 486 (1960); *Perry* v. *Sindermann*, supra, pág. 597. Véase también: *Báez Cancel* v. *Alcalde Mun. de Guaynabo*, 100 D.P.R. 982 (1972) (Torres Rigual), en que rehusamos limitar la protección de la Sec. 1 del Art. II de la Constitución de Puerto Rico a los empleados con permanencia, por dejar tal interpretación huérfanos de amparo precisamente a los más desvalidos.

Confirmaría la resolución del Tribunal Superior y devolvería el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí expuesto.

—O—

Opinión del Juez Asociado, Señor Torres Rigual con la cual concurre el Juez Asociado Señor Martín. El Juez Asociado Señor Irizarry Yunqué concurre en el resultado.

San Juan, Puerto Rico, a 8 de octubre de 1975

Deseo consignar las razones que me impiden suscribir las abarcadoras normas que proponen los compañeros Jueces Trías Monge y Díaz Cruz en sus respectivos votos separados en este caso.

No creo que la condición precaria del empleo por contrato justifique bajo cualquier circunstancia restricciones indebidas a la libertad de expresión. Tampoco creo que la libertad de expresión sea tan absoluta que el Estado no pueda restringirla en beneficio de un interés social predominante o por razones de orden público.

La diversidad de empleos por contrato de término fijo—desde el maestro de escuela que se contrata anualmente y que tiene una expectativa razonable en la renovación del contrato hasta el técnico que se contrata para una tarea específica—sugieren la aplicación de normas flexibles. La restricción al derecho de expresión del empleado nunca debe exceder lo necesario para proteger el interés legítimo del Estado en proveer una administración pública de orden y eficiencia. Considero, por tanto, factores pertinentes en esta determinación las circunstancias relativas al contrato de empleo, la expectativa razonable de renovación del mismo, la naturaleza de las funciones que desempeña el empleado, el contenido y alcance de sus manifestaciones públicas, el tono, corrección y veracidad de las mismas, y, el efecto de éstas en la administración ordenada y eficiente de la agencia.

Por otro lado, cuando se trata como en este caso de la terminación de un contrato que específicamente provee que cualquiera de las partes puede darlo por terminado con notificación previa, no basta la simple alegación de la violación del derecho a la libre expresión, pues el contrato por sí solo no le da derecho a seguir en el empleo. Es necesario que el demandante demuestre la existencia de otras circunstancias de las cuales se pueda razonablemente derivar que él tiene algún derecho a continuar en el empleo. *Cf. Board of Regents* v. *Roth*, 408 U.S. 564 (1971); *Perry* v. *Sindermann*, 408 U.S. 593 (1971), Notes: *Implied Contract Rights to Job Security*, 26 Stan. L. Rev. 335, 348–350.

A tenor con las anteriores consideraciones y debido a la importancia de las cuestiones envueltas creo que se debe dar la oportunidad al interventor de enmendar sus alegaciones, si es que está en condiciones de poderlo hacer y de la celebración de una vista en las que se diluciden estas cuestiones.

—O—

Opinión emitida por el Juez Asociado Señor Díaz Cruz en la cual concurren los Jueces Asociados Señores Rigau, Dávila y Negrón García.

San Juan, Puerto Rico, a 8 de octubre de 1975

El Departamento de Servicios Sociales entró como parte en un contrato de arrendamiento de servicios con una persona a quien entregó la dirección, coordinación y supervisión del Plan de Divulgación del Programa de Alimentos. La duración pactada siempre fue breve, primero por 90 días y luego por un año, conviniéndose la siguiente cláusula de terminación:

"Las partes podrán dar por terminado el presente contrato meramente notificando de su intención, quince (15) días naturales antes de la fecha en que quedará terminado ...."

Faltando seis meses para expirar el contrato, la agencia gubernamental notificó la terminación, usando del derecho re-

servado a ambas partes bajo la citada cláusula. El arrenda- dor de servicios instó acción de *injunction* alegando algo similar a despido sin justa causa motivado por críticas que en los medios publicitarios hiciera al Departamento. La Sala de instancia denegó una moción de sentencia sumaria del Gobierno.

Los empleados profesionales por contrato se rigen por normas distintas a las que gobiernan los empleados públicos de carrera. De lo contrario quedaría trastocada y desnatura- lizada la buena práctica administrativa de contratar agentes libres para prestar servicios en determinadas esferas guber- namentales. La complejidad del gobierno y el desarrollo tec- nológico usualmente requieren la contratación a corto plazo de un personal con destrezas especiales para encauzar pro- gramas, reorganizar oficinas y mejorar el servicio público en las múltiples áreas de su presencia. Usualmente los contra- tados son profesionales que arriendan sus servicios bajo con- trato en labores como asesoramiento en numerosas materias, diseños de sistemas gerenciales y de contabilidad y auditoría, reorganización interna de la agencia y prestación de servicios especiales que resultan más eficientes cuando se obtienen de la empresa privada.

Estas personas no son propiamente empleados guberna- mentales ni servidores públicos en el legítimo concepto de esa clasificación. Arriendan sus servicios al Gobierno al igual que a una refinería, una fábrica o un banco. Sus derechos consti- tucionales son respetables pero también lo es su capacidad para limitar el término de sus servicios.

El Departamento de Servicios Sociales no le impuso al periodista Rivera Torres la cláusula de terminación de ser- vicios con 15 días de notificación. Si en vez del Gobierno hubiera sido el empleado quien abandonara su labor con la mera notificación, ¿quién cuestionaría su libertad de irse sin importar el orden o el caos en que dejara su escritorio?

No podemos aceptar una clase de contratantes que se tornan privilegiados tan pronto su libérrima voluntad para obligarse hace contacto con una agencia gubernamental. Ni siquiera se trata aquí de una parte débil e ignorante a quien ha de extenderse protección especial. Estos técnicos, asesores y especialistas vienen mayormente del campo de la libre empresa donde además de imponerse por su capacidad y eficiencia perfeccionan el método de arrendar y cobrar por sus servicios.

Hay que distinguir un contrato de derecho privado entre una agencia pública y una persona particular, de un nombramiento administrativo regulado por el derecho público. La posición de esta clase de empleados por contrato es similar a los empleados de confianza dentro del servicio público. De hecho los primeros tienen un contrato cuyos términos les dan toda la protección que ellos mismos convinieron. Los de confianza están a merced de un gesto de disgusto de su jefe y a nadie se le ha ocurrido que con ello se vulnera la Constitución.

No es cuestión a decidir en este caso ni la libertad de palabra, ni ninguna otra de las libertades. Se trata escuetamente de la validez y eficacia de una cláusula contractual de terminación de servicios adoptada por la voluntad de ambas partes contratantes. Frente a la moción de sentencia sumaria del Gobierno, basada en el contrato, es tan irrelevante la declaración jurada del arrendador de servicios inyectando su derecho constitucional a hacer expresiones públicas, como lo sería su derecho a bañarse en una playa pública.

De equiparar a este profesional arrendador de servicios con el personal gubernamental permanente, el Gobierno habrá de renunciar la práctica generalizada y necesaria de contratación de personal técnico y de asesoría por plazos cortos y con cláusulas recíprocas de terminación, porque nada valdrá el contrato frente a un afidávit acusando la supresión de los derechos civiles de alguien. Condena el servicio público a prescindir de la valiosa aportación de estos técnicos, pues no

habría certeza de la cuantía de fondos públicos a desembolsar, ya que una parte tendría la palabra final sobre la duración del contrato. Estos servicios técnicos son costosos y la cláusula de terminación es esencial a la planificación y ajuste del presupuesto de la agencia; como también lo es para proteger al Departamento en caso de ineficiencia o inutilidad del contratado.

No se está negociando ni contratando sobre la libertad de palabra de nadie, sino sobre servicios que necesita nuestro país, y que deben dársele a la medida de los recursos fiscales. La libertad de gobernar y de cumplir el mandato del Pueblo no deben quedar a merced del sofisticado capricho con antifaz constitucional de un individuo.

Anularía la resolución recurrida y desestimaría sumariamente la solicitud de *injunction*.

—O—

Voto explicativo del Juez Asociado Señor Negrón García, con el cual concurren los Jueces Asociados Señores Dávila y Díaz Cruz.

San Juan, Puerto Rico, a 8 de octubre de 1975.

Debe desestimarse la acción interpuesta por el interventor, Sr. Manuel Rivera Torres, periodista de profesión que contrató sus servicios profesionales con el Departamento de Servicios Sociales para dirigir, coordinar y supervisar el Plan de Divulgación del Programa de Cupones de Alimentos. No albergo dudas, en orden a un análisis de las cláusulas del contrato, que los deberes y responsabilidades profesionales del interventor tienen su génesis y abarca una relación fiduciaria, análoga a la de distintos puestos gubernamentales, clasificados como exentos, por el elemento inseparable de confianza que a dicho nivel conllevan.

En su alegato ante nos, admite que su demanda no está predicada en una violación de sus derechos civiles y constitu-

cionales por razón de ideas políticas como tampoco cuestiona la validez legal del contrato existente, que contiene entre otras, la cláusula sobre notificación y terminación anticipada de servicios invocada por el peticionario Ramón García Santiago para dar por terminado el contrato.

Su demanda está fundada en un intento de impugnar la actuación del peticionario, caracterizada como inconstitucional sin exponer hechos constitutivos de tal alegación. Sólo se alega el ejercicio de su derecho a la libre expresión al públicamente difundir, a través de los medios de comunicación existentes, sus ideas críticas respecto a las normas que deben implantarse para mejorar la administración pública, a la par que solicitar del Estado reparaciones por agravios resultantes de las condiciones de su empleo.

En ausencia de alegaciones específicas expositivas de hechos o circunstancias discriminatorias [1] sobre las cuales pueda derivar el interventor un derecho a permanecer empleado en un puesto de confianza—haya o no ejercitado el derecho a la libre expresión—la validez de la actuación gubernamental al amparo del contrato, no debe estar sujeta al escrutinio judicial por simplemente invocarse un derecho en abstracto. ¿Si se admite la validez de la cláusula de terminación anticipada de servicios profesionales y no se alegan circunstancias que impidan su aplicación, como es posible que se pretenda anular su eficacia por haber el interventor ejercitado, por propia decisión, el derecho a la libre expresión aspirando con ello una permanencia en un puesto de confianza?

[1] "No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas." Art. II, Sec. 1, Constitución.