TEXTO COMPLETO DE LA RESOLUCION
Mediante el presente recurso de certiorari, la peticionaria, American International Insurance Company of Puerto Rico, nos solicita la revocación de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el día 28 de febrero del 2000, debidamente notificada a las partes el día 8 de marzo del mismo año. En dicha resolución, el tribunal a quo declaró sin lugar una moción de sentencia sumaria presentada por la peticionaria. En la solicitud de sentencia sumaria la parte sumaria la parte peticionaria alegó que la causa de acción de la demandante-recurrida estaba prescrita.
Analizados cuidadosamente los hechos del caso, a la luz del derecho aplicable y la jurisprudencia interpretativa, denegamos la expedición de auto solicitado, por resultar prematuro el recurso en la etapa procesal presente.
*723 I
Trasfondo Fáctico
Según surge de los hechos alegados por las partes en los escritos ante nuestra consideración, el día 14 de junio de 1996, la demandante, Iris Miriam López Algaríh, sufrió un accidente automovilístico en el cual su vehículo fue impactado por el vehículo conducido por el señor Jorge Bataille. El vehículo manejado por el señor Bataille era de la propiedad de Crossland Boilers, Inc., compañía asegurada por la American International Insurance Company of Puerto Rico, la parte aquí peticionaria.
Contra el conductor del vehículo se presentó una acción criminal que no se llevó a término por razón de que la parte demandante manifestó que sólo tenía interés en ser indemnizada por los daños sufridos en su persona y el vehículo. En la vista criminal se informó que el vehículo conducido por el señor Bataille estaba asegurado por la peticionaria.
Mediante escrito del día 5 de agosto de 1996, la demandante autorizó a su representación legal, Ledo. Rafucci Carrión, a gestionar los daños sufridos por su vehículo. En septiembre del 1996 la demandante le presentó a la peticionaria su reclamación por los daños causados al vehículo.
En 20 de septiembre del 1996, la representación legal de la demandante le envió a la peticionaria una carta, anejando en la misma un relevo firmado por la demandante, en el que ésta aceptaba la transacción de los daños al vehículo.
A partir de ese momento las partes intercambiaron unas serie de cartas relacionadas a la reclamación de la demandante contra la aseguradora. A continuación exponemos la cronología de dichas misivas.
En 20 de noviembre de 1996, la representante de reclamaciones de la aseguradora-peticionaria le envió una carta a la representación legal de la demandante, informándole que estaban esperando les fuera suministrada la evidencia médica de su cliente.
En 5 de diciembre de 1996, la demandante le envió a la peticionaria una carta en la que incluyó su autorización médica y expediente médico relacionado con la reclamación.
En 6 de febrero de 1997, la demandante le envió otra carta a la representante de reclamaciones de la peticionaria en la cual se incluyó un informe de evaluación y tratamiento realizado por ACAA, y unos expedientes médicos.
En 26 de enero del 1998, la demandante cursó una tercera carta a la representante de reclamaciones de la peticionaria en la que anejó copia de un expediente médico y de una notificación de ACAA. Informó que en breve enviaría información médica adicional.
En 4 de junio del 1998, la demandante le envió a la peticionaria, una vez más, una carta en la que incluyó copia de sus "progress notes" enviados por un doctor.
Finalmente, en 26 de junio de 1998, la peticionaria le envió una carta a la demandante informándole que del expediente de dicha aseguradora no surgía que se hubiera realizado alguna reclamación por los daños sufridos, y que habiendo prescrito la acción procedería a cerrar el caso.
Como respuesta a lo anterior, el 15 de julio de 1998, la demandante presentó demanda ante el tribunal de instancia alegando haber sufrido daños y perjuicios, incluyó como parte demandada, entre otros, a la aseguradora, aquí peticionaria.
La peticionaria presentó contestación a la demanda en la que levantó como defensa afirmativa la alegación *724 de que la causa de acción seguida en su contra estaba prescrita.
Posteriormente, el día 11 de abril de 1999, la peticionaria presentó una moción de sentencia sumaria. Planteó en dicha moción que a la fecha en que la demandante presentó su demanda por daños y peijuicios ya había transcurrido el término prescriptivo, sin que el mismo hubiera sido interrumpido. Adujo que las comunicaciones habidas con la demandante no constituyeron una reclamación extrajudicial que tuvieran efecto interruptor sobre el término prescriptivo, por lo que la demanda debía ser desestimada. La moción de sentencia sumaria fue debidamente acompañada por los documentos a los que se aludió en la misma.
Oportunamente, la parte demandante presentó moción en oposición a sentencia sumaria. Argüyó, que a partir de la reclamación que le hiciera a la aseguradora demandada por los daños sufridos en septiembre del 1996, las cartas que posteriormente le enviaran a dicha aseguradora demandada constituían una reclamación extrajudicial interruptora del término prescriptivo. Añadió, además, que el pago que dicha aseguradora le hiciera previamente a la demandante por los daños del vehículo constituía un reconocimiento de la deuda por el deudor con efecto interruptor sobre el termino prescriptivo.
En 28 de febrero del 2000, el tribunal de instancia emitió la resolución de la cual se recurre, en la que declaró No Ha Lugar la moción de sentencia sumaria presentada. Determinó dicho foro que había una clara controversia en cuanto a hechos materiales por cuanto no quedaba claro si en efecto se había realizado o no una reclamación extrajudicial.
Inconforme con el anterior dictamen, la peticionaria recurre ante nos y plantea el siguiente error:

“Erró el Tribunal de Primera Instancia al declarar No HA LUGAR la Moción de Sentencia Sumaria por Prescripción radicada por la aquí peticionaria. ”

II
Derecho Aplicable
La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, permite a un demandado "presentar una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". Revlon v. Las Américas Trust Co., _ D.P.R. _ (1994), 94 J.T.S. 27; H.M.C.A., Inc. v. Contralor, _ D.P.R. _ (1993), 93 J.T.S. 112; World Wide Food Distributors, Inc. v. Colón Bermúdez, _ D.P.R. _ (1993), 93 J.T.S. 114.
La sentencia sumaria como instrumento procesal es un remedio discresional extraordinario que sólo se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Mediante dicho mecanismo procesal se pretende obtener un remedio rápido y eficaz en casos en que quede demostrado que no existe una controversia sobre los hechos materiales del litigio. P.F.Z. Properties v. General Accident Insurance, _ D.P.R. _ (1994), 94 J.T.S. 116; Medina Morales v. Merk, Sharp & Dohme, _ D.P.R._, 94 J.T.S. 52; Caquías Mendoza v. Asoc. Residentes Mansiones de Río Piedras, _ D.P.R. _ , 93 J. T.S. 127. Son dos las determinaciones que debe hacer un tribunal para que pueda disponer del caso sumariamente: que no existe controversia en cuanto a los hechos, y que en derecho procede emitir sentencia a favor de la parte que lo solicita.
Cuando la parte que solicita la sentencia sumaria ha sometido su moción debidamente apoyada por declaraciones juradas y/o documentos que tiendan a establecer que no existe controversia de hechos, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligado a contestar en forma tan detallada y específica, como lo hubiera hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestre que existe una controversia real que debe ser dilucidada en juicio. La omisión por la parte que se opone a la sentencia sumaria de incluir declaraciones *725 juradas u otra documentación que apoye su posición, no implica que de no incluirlas sea base para que se emita un dictamen sumario automáticamente, pero le pone en riesgo de que ello ocurra. P.P.Z. Properties v. General Accident Insurance, D.P.R. (1994); Pilot Life Insurance Company v. Crespo Martínez, _ D.P.R. (1994), 94 J.T.S. 104; Corp. of Presiding Bishop v. Purcell, 117 D.P.R. 714 (1987).
Expuesto el marco procesal en el cual se encuentra situado el caso ante nos, procede entonces considerar si la actuación del tribunal recurrido, al negarse a resolver mediante sentencia sumaria, el asunto de la prescripción de la acción de la recurrida, y recibir prueba al efecto en juicio.
III
Concepto y Doctrina de la Prescripción Extintiva.
Al iniciar la senda del análisis y determinación de este Tribunal, procede un examen de la prescripción de las acciones como principio sustantivo en el Código Civil de España y en el de Puerto Rico, y su interpretación jurisprudencial por el Tribunal Supremo de Puerto Rico.
En Alicea v. Córdoba, 117 D.P.R. 676, 684 (1986), indicó el Tribunal Supremo que "[la] razón de ser de los estatutos de prescripción fue delineada en Colón Prieto v. Geigel, 115 D.P.R. 232, 243 (1984), en los siguientes términos:
La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. Agulló v. ASERCO, 104 D.P.R. 224, 248 (1975). Su innegable necesidad y valor responden a una presunción legal de abandono derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho. ” Eisele v. Orcasitas, 85 D.P.R. 85, 93 (1962). Sin embargo, ninguno de los intereses a los cuales responde es absoluto - de un lado salvaguardar un derecho y del otro, darle carácter definido a la incertidumbre de una posible reclamación - sino que deben ser aquilatados en su justa proyección.
En Ortiz v. Municipio de Orocovis, 113 D.P.R. 484, 487-488 (1982), seguido en Alicea v. Córdoba, supra, el Tribunal Supremo indicó que "el fundamento de la prescripción debe concebirse objetivamente, pues por ella se asegura la estabilidad de la propiedad y la certidumbre de los demás derechos. La economía y la vida jurídica sufrirían grave quebranto si el estado de hecho, representado por el ejercicio o no ejercicio de un derecho, no viniere a convertirse por el transcurso del tiempo en un estado de derecho inatacable".
El más completo y riguroso análisis de la institución de la prescripción aparece en José Zambrana Maldonado v. Estado Libre Asociado de Puerto Rico, 129 D.P.R. 140 (1992), (Hon. Myriam Naveira, Juez), el que reproducimos aquí por servir de marco de referencia al análisis que seguimos en esta sentencia.
En nuestra jurisdicción civilista, distinta a aquellas donde priva el derecho común ("common law"), "la prescripción no es materia procedimental, es materia sustantiva, objeto de tratamiento específico por nuestro Código Civil, Arts. 1840-1874, 31 L.P.R.A. Secs. 5261-5304." Febo Ortega v. Tribunal Superior, 102 D.P.R. 405, 407 (1974). Véase también Arts. 39-42, 44-49 del Código de Enjuiciamiento Civil, 32 L.P.R.A. Secs. 253-256, 258-263.
El inciso (2) del Art. 1868 del Código Civil, 31 L.P.R.A. See. 5298, dispone que el plazo prescriptivo de las acciones para exigir responsabilidad por las obligaciones derivadas de la culpa o negligencia, Art. 1802 del Código Civil, 31 L.P.R.A. See. 5141, comienza a contar a partir del momento en que el agraviado tuvo conocimiento del daño. Rivera Encarnación v. E.L.A., 113 D.P.R. 383 (1982). El Artículo 1869 del Código Civil, 31 L.P.R.A. See. 5299, a su vez establece que cuando no exista disposición especial que otra cosa provea, el término prescriptivo para toda clase de acciones se contará desde el día en que pudieran ejercitarse. Art. 1869 del Código Civil, 31 L.P.R.A. See. 5299. Sobre este particular, la norma de derecho común es igual.
*726 La prescripción extintiva o liberatoria es una institución que "se basa en el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico, 'el señorío de las cosas', al evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones". De Jesús v. Chardón, 116 D.P.R. 238, 243 (1985); Brau del Toro, Herminio, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Vol. n, Cap. X, pág. 567, Publicaciones J.T.S., (1986); Albaladejo, Manuel, Derecho Civil, 10ma. Ed., T.I, Vol. 2do, sec. 107, págs. 493-534, Barcelona, (1989). De acuerdo a Diez Picazo "la razón última de la prescripción radica en la espera a que razonablemente pueda ser sometido el deudor o sujeto pasivo". 
De otra parte, la interrupción estatuida en el Artículo 1873 del Código Civil, 31 L.P.R.A. see. 5303, "...es la manifestación inequívoca de quien [sic], amenazado "con la pérdida de su derecho, expresa su voluntad de no perderlo". Feliciano v. A.A.A., 93 D.P.R. 655, 660 (1966); De Jesús v. Chardón, supra, págs. 246-247; Díaz de Diana v. A.J.A.S. Ins. Co., 110 D-P-R- 471, 477 (1980); Durán Cepeda v. Morales Lebrón, 112 D.P.R. 623, 625 (1982). Como se podrá observar, la prescripción es un fenómeno basado en la inercia, mientras que la interrupción está basada en la actividad, la ruptura de esa inercia. De acuerdo a Orozco Pardo, la "interrupción, suspensión y renuncia, son los componentes que hacen justa y moral a la prescripción". Orozco Pardo, Guillermo, La Interrupción de la Prescripción Extintiva en el Derecho Civil, Cap. III, pág. 59, Granada (1986). Cabe señalar "que la prescripción extintiva está basada en una presunción 'juris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Orozco Pardo, supra, Cap. V, pág. 193. Véase también Manresa y Navarro, Comentarios al Código Civil Español, T. VIH, 5ta. ed., págs. 909 ss., Madrid (1950).
De conformidad con el Artículo 1873 del Código Civil, para que la interrupción extrajudicial surta efecto, la reclamación o pretensión tiene que ser dirigida al sujeto pasivo del derecho y debe ser recibida por éste. Díaz de Diana v. A.J.A.S. Ins. co., supra, pág. 476. La reclamación, "aunque por regla general corresponde al titular del derecho, el representante voluntario o legal del titular puede formular la reclamación e interrumpir así la prescripción". Srio. Del Trabajo v. F.H. Co. Inc., 116 D.P.R. 823, 827 (1986).
En cuanto a la forma del acto de la reclamación, Diez Picazo nos dice: "...La Ley no exige, en este punto, ninguna forma especial y donde la ley no distingue tampoco debemos nosotros distinguir. En cualquier forma en que sea hecha la reclamación posee valor interruptivo... En todo caso, se podrá plantear un problema de prueba -de la existencia de la reclamación y de su fecha- pero no un problema deforma." (Enfasis suplido)
Albaladejo a su vez expresa:
"[EJntre el mero recordatorio de una deuda, sin ninguna dosis de reclamar su pago, y el puro acto de exigir deforma inexorable éste hay una serie de posiblidades intermedias, en las que debe entenderse que hay reclamación y, por tanto, interrupción de la prescripción siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad y de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago." (Enfasis suplido)
En cuanto al número de veces en que se puede ejercitar el derecho a interrumpir una acción, Diez Picazo es de la opinión que "nada se opone a que los derechos prescriptibles sean indefinidamente prolongados, sin límite alguno de tiempo, mediante sucesivas reclamaciones del titular o mediante sucesivos reconocimientos del sujeto pasivo o mediante ambas cosas conjuntamente".
Mas reciente aún, en Jussef M. Galib Frangie, y Otros v. El Vocero de Puerto Rico y Otra, 95 J.T.S. 71 (1995) (Andreu García, Juez Presidente), el Tribunal Supremo sostiene:
‘‘La prescripción es institución de derecho sustantivo que se rige por las disposiciones del Código Civil, y constituye una forma de extinción de un determinado derecho por la inercia de la relación jurídica durante un *727 período de tiempo determinado. El transcurso el período de tiempo establecido por ley sin que el titular del derecho lo reclame, da lugar a la presunción legal de abandono del mismo, lo que conjuntamente con la exigencia que informa el ordenamiento jurídico para eliminar la incertidumbre de las.relaciones jurídicas, constituyen los fundamentos básicos de la precripción extintiva. García Aponte v. ELA, Op. del 8 de febrero de 1994, D.P.R. (1994), 94 J.T.S. 14; Cintrón v. ELA, Op. del 7 de diciembre de 1990, D.P.R. (1990), 90 J.T.S. 128. La prescripción sirve a la paz jurídica, a la seguridad general y al bien público. Son razones de utilidad social los que le sirven de fundamento, los cuales no pueden quedar al arbitrio de los particulares. Guillermo Orozco Pardo define la prescripción como ‘una institución fundada en la seguridad jurídica, que atiende a dotar de certeza a las relaciones jurídicas, en su plano objetivo y cuya causa subjetiva de actuar está en la relevancia y consecuencia que la ley dota a la ausencia de una voluntad manifestada, expresa o tácitamente, por las partes de esa relación jurídica sujeta a prescripción. ’ ”
Como indican las Opiniones en Zambrana Maldonado y Galib Frangle, citadas ante, la prescripción extintiva de las acciones no es materia procesal, sino materia sustantiva regida por el Código Civil. Olmo v. Young & Rubicam of Puerto R.ico, Inc., 110 D.P.R. 749 (1981); Febo Ortega v. Tribunal Superior, 102 D.P.R. 405 (1974).
El establecimiento de los estatutos de prescripción es un asunto de política pública de los Estados y su determinación recae exclusivamente en la Legislatura. El Estado tiene amplia discreción para delimitar el tiempo en que se pueden interponer las acciones. Alicea v. Córdoba, supra; Aguiló v. ACERCO; supra; Ríos v. Banco Popular, 81 D.P.R. 378 (1959).
Del mismo modo, en Puerto Rico, el negocio de seguros, por estar revestido de sustancial interés público, está reglamentado por el Estado en el Código de Seguros, 26 L.P.R.A. secs. 101 et seq. PFZ Properties, Inc. v. General Accident Insurance Company, P.R. Ltd., _ D.P.R. _ (1994) 94 J.T.S. 116.
IV
Los Actos Interruptores de la Prescripción.
El Art. 1861 del Código Civil de Puerto Rico establece que; "[las] acciones prescriben por el mero lapso del tiempo fijado por la ley." 31 L.P.R.A. see. 5291.
Prescribe al año; "[la] acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que trata [el Art. 1802] desde que lo supo el agraviado."
El Art. 1873, del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5303, correspondiente al Art. 1.973 del Código Civil de España, proclama, por su parte, que:

“La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor. ”

La doctrina preconiza que; "[la] prescripción del derecho es lo excepcional, siendo su ejercicio o conservación lo normal, por lo que el ordenamiento jurídico potencia el ejercicio y conservación de los derechos mediante la utilización de los medios interruptivos de la prescripción." Galib Frangie v. El Vocero, supra.
En este sentido, citamos a ALAS, DE BUEN y RAMOS, quienes expresan:

"Las causas de interrupción no son algo anómalo, extraordinario, que infunden nueva vitalidad a los derechos, son, por el contrario, algo normal... pues es normal que los derechos, cuando existen, se reclamen O sean reconocidos por los obligados; y si las causas de interrupción son lo normal, lo normal será que el 
*728
derecho viva ilimitadamente hasta que llegue a su fin también normal - el cumplimiento total - la no realización de las causas de interrupción, o si se quiere de otro modo, el silencio de la relación jurídica, durante el plazo marcado por la ley, es el hecho que extingue a un derecho por sí destinado a vida ilimitada".

En definitiva, la prescripción del derecho es lo excepcional, su ejercicio o conservación, lo normal, por lo que nuestro ordenamiento debe potenciar el ejercicio y conservación de los derechos, lo cual pasa ineludiblemente por promover la aplicación y utilización de los medios interruptivos, siempre con las debidas garantías y cumpliendo los requisitos de relevancia y probatorios oportunos, exigibles a cada uno de estos respectivamente.
El acto interruptivo representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada ésta con anterioridad a que el plazo de deliberación se agote. García Aponte v. ELA, supra; Zambrana v. ELA, 92 J.T.S. 12 (1992), Galib Frangle v. El Vocero, supra.
La posición del Tribunal Supremo de España es cónsona con la asumida por el Tribunal Supremo de Puerto Rico en Galib Frangle, supra:
He aquí la lógica consecuencia de la postura que nuestro Tribunal Supremo ha venido manteniendo, como ya hemos podido comprobar, a lo largo del tiempo: se admite la prescripción como un "mal necesario", en evitación de otro mayor, la inseguridad de las relaciones jurídicas, pero defendiendo siempre un tratamiento restrictivo y no rigorista de la misma. Esta postura sigue hoy plenamente en vigor como lo demuestran las recientes Sentencias de 2 de febrero y de 7 de mayo de 1984, entre otras, donde se recoge la prescripción como límite al ejercicio tardío de los derechos en beneficio de la seguridad jurídica, que no ha de merecer una aplicación técnicamente desmedida, antes bien como instituto no fundado en la justicia intrínseca ha de ser objeto de un tratamiento restrictivo. 
Las autoridades contemporáneas concurren en que la prescripción merece el tratamiento restrictivo que señala Orozco Pardo, ob cit., pág. 151:

“Como se ha podido constatar en páginas precedentes, la óptica proyectada sobre la prescripción ha llevado a la Jurisprudencia a propugnar un tratamiento restrictivo para su aplicación en la vida real, ello es así, porque se ha entendido que la prescripción, al no estar fundada en la intrínseca justicia, merece un tratamiento restrictivo, para que una aplicación rigorista y desmedida de la misma no ocasione perjuicios inadmisibles: tal postura ha venido manteniéndose por nuestro Tribunal Supremo de forma unívoca e invariable a lo largo de sus sentencias, así lo mantienen sentencias tan recientes como la de 4 de octubre de 1985. Coincidimos plenamente con esta postura, en cuanto que el modo natural y lógico de extinción de un derecho es su ejercicio, a través del cual su titular obtiene la satisfacción del interés que le es inherente; por lo que toda medida dirigida a potenciar el pacífico y oportuno ejercicio de los derechos nos parece acorde con la justicia y beneficiosa para el bien común. Por tanto, es coherente la postura que restringe el ámbito de aplicación de una institución que supone la extinción "anormal" del derecho; sin que con ello queramos decir que es éste el objeto de la prescripción, afirmación de la que disentimos, pero de la cual ahora no podemos entrar a ocupamos. ”

V

La Reclamación Extrajudicial Como Acto Interruptor.
Las tres alternativas para interrumpir la prescripción son las siguientes; primera, "el ejercicio de la acción ante los tribunales desde que lo supo el agraviado", segunda, "la reclamación extrajudicial", y tercera, "el acto de reconocimiento de la deuda por el deudor", podemos descartar la primera.
El accidente en que estuvo envuelto Iris M. López Algarín ocurrió el día 14 de junio de 1996, fue conocido *729 por ésta ese mismo día, y la demanda se presentó el día 15 de julio de 1998, esto es, pasado el término prescriptivo de un (1) año para las acciones por daños y peijuicios. Tomado aisladamente el hecho anterior, la demanda presentada no interrumpiría el término para ejercitar la acción, sin embargo, como discutiremos más., adelante, es necesario examinar si el término prescriptivo fue interrumpido por algún otro de los medios de interrupción de la prescripción.
En Galib Frangle v. El Vocero, supra, pág. 922, indica el Tribunal Supremo sobre los actos interruptivos:

“Los requisitos de los actos interruptivos son: a) la oportunidad o tempestividad, qué requiere que él ejercicio de la acción debe realizarse antes de la consumación del plazo; b) la legitimación, según la cual el ejercicio corresponde al titular del derecho o acción; c) identidad, que consiste en que la acción ejercitada ha de responder exactamente al derecho que está afectado por la prescripción; d) idoneidad del medio utilizado. ”

En definitiva, la reclamación extrajudicial puede plasmarse a través de distintos actos, pero todos ellos han de cumplir con los requisitos genéricos de oportunidad, identidad, legitimación e idoneidad antes reseñados. 
Guillermo Orozco Pardo, ob cit., a la pág. 65 nos indica:

“Al abordar el tema que nos ocupa, lo primero que hemos podido constatar, es que se hace muy difícil obtener un concepto unitario que abarque los distintos tipos de actos posibles, por cuanto no se pueden obtener conclusiones generalizadas aplicables a todos ellos, dada la diversidad de sujetos, fines y medios utilizables. Esta situación queda perfectamente plasmada en las siguientes palabras de DIEZ PICAZO: "Desde el punto de vista estructural, los diversos actos interruptivos carecen de homogeneidad, quizá es equivocado tratar de situarlos dentro de una fórmula de carácter general."

El acto interruptor de la prescripción, "[es] un acto unilateral para el que está legitimado sólo el titular, salvo en aquellos supuestos en que otra persona puede actuar por él, ya que trata de un acto conservativo, para el que basta un poder general de administración. Así lo admite el Tribunal Supremo en sentencias ya comentadas, sin que se exija que tal poder conste de antemano, incluyendo el mandato verbal, por lo que puede decirse que en el concepto de la reclamación extrajudicial se admite la actuación de un tercero legitimado para actuarla." 

"Es de carácter recepticio, por cuanto que tal voluntad debe ser conocida por su destinatario. Esta afirmación debe ser matizada con los comentarios hechos anteriormente al tratar el carácter recepticio del acto interruptivo. Así lo admite el Tribunal Supremo, si bien dotó de efectos interruptivos a la reclamación dirigida a personas indeterminadas, como se recoge en la ya comentada Sentencia de 16 de diciembre de 1968." Id.

Lo más importante es que en cuanto a su forma, nos dice Orozco Pardo, supra, a la pág. 195:
“En cuanto a su forma la Ley no plantea ninguna exigencia concreta, por lo que esta cuestión debe contestarse atendiendo a los principios generales, teniendo siempre presente que debe tratarse de una verdadera reclamación en la que ha de recogerse claramente la voluntad de exigir la prestación debida. La sentencia de 6 de diciembre de 1968, admitiendo esta libertad deforma, pone de relieve la necesidad de que, sea cual sea el medio utilizado, se tenga presente que ha de ser susceptible de ser probado, puesto que la interrupción es una cuestión de hecho que ha de probar el que la alega, si bien el alcance del medio interruptivo no puede ser mermado por el personal criterio de las partes, ya que es una cuestión de hecho de apreciación exclusiva del Tribunal de'Instancia. ”
Y en Galib Frangie v. El Vocero, _ D.P.R. _ (1995), 95 J.T.S. 71, a la pág. 922, citando a Zambrana v, E.L.A., supra, se indica que:

*730
“En cuanto a la reclamación extrajudicial no hay relación limitativa hecha por la ley sobre que actos son los que se incluyen en esta causa interruptiva, admitiendo como tales todos aquellos en que la voluntad del acreedor quede patente. En cuanto a la forma de la reclamación la ley no exige ninguna forma especial. ”

VI
El reconocimiento de la "Deuda" u Obligación el deudor.
Respecto al tercer mecanismo de interrupción de la prescripción, el reconocimiento de la deuda por el deudor, nuestro Tribunal Supremo ha expresado lo siguiente;
"Hemos interpretado que el reconocimiento de deuda tiene que ser realizado por el deudor, de forma espontánea y con la específica intención de reconocer la existencia de un derecho en su contra. Agosto Ortiz v. Municipio de Río Grande, _ D.P.R. _ (1997), 97 J.T.S. 69. Como podemos observar serán necesarios los mismos requisitos que en las reclamaciones extrajudiciales. Es decir, se requiere también (a) la oportunidad del reconocimiento, (b) que lo haga la persona legitimada para ello, es decir, el propio deudor, (c) que se reconozca exactamente el derecho afectado por la prescripción y (d) que el medio utilizado para tal reconocimiento de deuda sea uno idóneo, mediante el cual se exprese claramente la intención de admitir la vigencia de la deuda. González Rodríguez v. Wal-Mart Inc., _ D.P.R. _ (1998), 98 J.T.S. 149.”
La trayectoria que ha seguido nuestro tribunal de última instancia respecto a los mecanismos de interrupción de la prescripción extintiva, la reclamación extrajudicial y reconocimiento de la deuda por el deudor, demuestra una evolución dirigida a la liberalización de dicho instrumento de los legalismos de forma impuestos en opiniones previas. Ver al respecto: Zambrana v. E.L.A., supra; Acosta Quiñónez v. Matos Rodríguez, _ D.P.R. _ (1994), 94 J.T.S. 47; Galib Frangle v. Sociedad de Gananciales, supra; Agosto Ortiz v. Municipio de Río Grande, _ D.P.R. _ (1997), 97 J.T.S. 69; Martínez Arcelay v. Peñagarícano Soler, _ D. P.R. _ (1998), 98 J.T.S. 29, González Rodríguez v. Wal Mart Inc., _ D.P.R. _ (1998), 98 J.T.S. 149; León Crespo v. Caparra Center, _ D.P.R. _ (1999), 99 J.T.S. 29. De esta tendencia señalada surge la reciente expresión del Tribunal Supremo en el sentido de que;
"sería jutil e inconsecuente requerir a quienes reclaman un derecho extrajudicialmente que, siempre que se comuniquen con el deudor, esbocen nuevamente los hechos que dieron lugar a la reclamación, el daño causado, que el deudor es el responsable de dicho daño, y la indemnización. Así concluimos que, en casos como el de autos, una vez se ha efectuado una reclamación extrajudicial suficiente en derecho, no es necesario que cada vez que el acreedor desee interrumpir nuevamente el término precriptivo, se repitan asuntos previamente expresados; ello siempre que se pueda concluir que de las posteriores cartas surja la intención de éste de no perder su derecho." León Crespo v. Caparra Center, _ D.P.R. _ (1999), 99 J.T.S. 29, a las págs. 704 y 705.
En el presente caso, según los documentos ante nos, a partir de la alegada reclamación extrajudicial que le hiciera la parte demandante a la aseguradora demanda en agosto de 1996, dicha parte demandante se mantuvo en contacto con la aseguradora mediante cartas sucesivas presentadas, antes de que transcurriera un año entre las mismas. Es decir, en las cartas y conversaciones encaminadas a lograr una suma en transacción, no hubo un hiato o lapso de inactividad o abandono del derecho de pedir, de un año.
Tal como expresó el tribunal de instancia, resulta fundamental en esta etapa procesal, concederle a las partes la oportunidad de presentar prueba tendente a demostrar si se efectuó o no la reclamación extrajudicial que se alega fue hecha por la demandante en el año 1996. Dicho hecho va a la médula de la controversia presentada por cuanto de determinarse que si se efectuó la reclamación extrajudicial en dicha fecha, la causa de acción no estaría prescrita, según la normativa expuesta en León Crespo v. Caparra Center, supra.
En el caso de autos el tribunal de instancia aún no ha determinado si la causa de acción de la demandante se *731 encuentra prescrita, tal decisión se la reservó para luego de escuchar la prueba de las partes. Coincidimos con dicha apreciación.
El uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí de forma no controvertida todos los hechos materiales pertinentes, y de que, por lo tanto, una vista en los méritos resultaría innecesaria. Casto Soto v. Hotel Caribe Hilton, _ D.P.R. _ (1994), 94 J.T.S. 128. En el presente caso resulta necesario que el tribunal de instancia celebre una vista en la que pueda dilucidar, por medio de la prueba que presenten las partes, la alegada reclamación extrajudicial inicial que le hiciera la demandante recurrida a la aseguradora peticionaria.
VII
Por los fundamentos que anteceden, se deniega la expedición del auto de certiorari solicitado.
Notifíquese.
Lo acordó y ordena el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2001DTA 33
1. En De Jesús v. Chardón, supra, a la pág. 245, se indica:

"Se advertirá el entronque entre el fundamento de la prescripción extintiva y los actos interruptores de ella. Mal puede castigarse la inercia o desidia del acreedor cuándo éste intenta valer su derecho. En tal caso se borra enteramente el plazo transcurrido y el tiempo ha de contarse de nuevo por entero una vez cese la causa interruptiva. Diez Picazo, op. cit. pág. 100."

2. Orozco Pardo, ob cit., pág. 21.
3. G. Orozco Pardo, ob cit., pág. 195.
4. G. Orozco Pardo, supra, a la pág. 195.